Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff and all others similarly situated*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BEER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>GOBRANDS, INC.,<br><br>*Defendant.* | Case No. 2:22-cv-7386<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# Table of Contents

**I.  Introduction.**..........................................................................................................3

**II.  Parties**..................................................................................................................3

**III. Jurisdiction and Venue.**........................................................................................4

**IV. Facts.** ...................................................................................................................4

   A.  California's Automatic Renewal Law.............................................................4

   B.  Gopuff violates the Automatic Renewal Law.................................................6

   C.  Gopuff misled and injured Mr. Beer. ............................................................12

**V.  Class action allegations**......................................................................................13

   The California Class.............................................................................................13

**VI. Claims**.................................................................................................................15

   First Cause of Action: False Advertising Law (FAL) .........................................15

   Second Cause of Action: Unfair Competition Law (UCL) .................................16

   Third Cause of Action: Consumers Legal Remedies Act (CLRA) .....................17

**VII.  Relief.**................................................................................................................18

## I. Introduction.

1. In recent years, companies that sell goods or services online have sought to boost sales by enrolling their customers in automatically renewing subscriptions. One sales practice is to offer a free trial and then, at the end of the trial, automatically enroll consumers in a paid subscription program. Some companies fail to make clear to consumers that they are being signed up for automatic charges.

2. To protect Californians from these practices, California passed the Automatic Renewal Law (the ARL). The ARL requires companies who sign consumers up for automatically renewing purchases to provide "clear and conspicuous" disclosures about the autorenewal plan and obtain "affirmative consent" to enroll consumers.

3. Gopuff is an online grocery shopping and delivery service. The Gopuff Fam Subscription Program ("Fam") is a subscription plan where consumers pay $5.95/month for grocery delivery. This fee is for the delivery service only; the cost of groceries is on top. Fam plans automatically renew. For example, when the monthly plan ends, consumers are automatically renewed and charged $5.95 for another month.

4. To enroll more consumers in Fam, Defendant offers a free trial offer. At the end of the trial, consumers are automatically enrolled in a monthly subscription, at $5.95/month. And that subscription automatically renews each month at that price. But Gopuff does not provide clear and conspicuous disclosures or obtain affirmative consent before enrolling consumers in this autorenewal plan. Consumers like Plaintiff are being enrolled in this subscription plan in violation of California consumer protection laws.

## II. Parties.

5. Plaintiff Jonathan Beer resides in Los Angeles, California. The proposed class includes citizens of California.

6. Defendant GoBrands, Inc. (doing business as Gopuff) ("Gopuff") is a Delaware corporation with its principal place of business at 537 North 3rd Street, Philadelphia, PA 19123.

**III.     Jurisdiction and Venue.**

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

8. The Court has personal jurisdiction over Defendant because it sold Fam subscription plans to consumers in California, including to Mr. Beer.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling a Fam subscription plan to Mr. Beer.

**IV.    Facts.**

   **A.     California's Automatic Renewal Law.**

10. The Automatic Renewal Law ("ARL") is part of California's False Advertising Law.  The purpose of the ARL is to "end the practice of ongoing" subscription charges "without the consumers' explicit consent."  Cal. Bus. & Prof. Code §17600.  To this end, the law makes it illegal for companies to charge consumers for automatically renewing subscriptions, unless the company meets strict disclosure and consent requirements.

11. Under the ARL, a company must "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in

the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer." Cal. Bus. & Prof. Code §17602(a)(1).[1]

12. Also, if "the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial." Cal. Bus. & Prof. Code § 17602(a)(1).

13. The "automatic renewal offer terms" that must be presented include:

 1) That the subscription or purchasing agreement will continue until the consumer cancels.

 2) The description of the cancellation policy that applies to the offer.

 3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

 4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

 5) The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code §17601(b)(1)-(5).

14. A "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other

---

[1] A new version of the ARL became effective July 1, 2022. This complaint cites to the previous version of the law (effective before July 1, 2022).

marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(c).

15. After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms." Cal. Bus. & Prof. Code §17602(a)(2).

16. The ARL also has post-purchase acknowledgment requirements (required in addition to the pre-purchase requirements described above). Cal. Bus. & Prof. Code §17602(a)(3) & (b).

**B.     Gopuff violates the Automatic Renewal Law.**

17. Gopuff is a popular online grocery shopping and delivery service. The Gopuff Fam Subscription Program ("Fam") is a subscription plan where consumers pay $5.95/month for grocery delivery. This fee is for the delivery service only; the cost of groceries is on top. Fam plans automatically renew. For example, when the monthly plan ends, consumers are automatically renewed and charged $5.95 for another month.

18. Gopuff enrolls consumers in Fam by offering a 14-day free trial. At the end of the trial, consumers are automatically enrolled in a recurring monthly subscription, at $5.95/month. But Gopuff does not provide clear and conspicuous disclosures or obtain affirmative consent before enrolling consumers in this autorenewal plan.

19. Gopuff offers its services through its smartphone app. In the app, consumers see this advertisement describing the Fam free trial:



20. As seen in the graphic above, consumers are able to sign up for Fam simply by tapping the "Start Trial" button at the bottom of the page. Consumers have no reason to scroll down in the app to hunt for additional, hidden terms. And, the app does not require the user to scroll before clicking "Start Trial."

21. None of the required disclosures are visible to the consumer before they are able to click the "Start Trial" button to begin their free trial. Instead, the

disclosures are located at the very bottom of the advertisement, hidden from view. They require a consumer to scroll all the way down to the bottom of the page to view them. Only if a consumer happened to scroll down, they would see this:




22. Because the disclosures are hidden at the bottom of the advertisement (invisible unless the consumer scrolls down), consumers click "Start Trial" and begin their Fam subscription without ever seeing the disclosures.

23. In addition to being hidden from view, the disclosures are in very small, black text. The hidden location and the very small font size of the text are

1  designed to go unnoticed.  The disclosure does not provide a clear and conspicuous
2  explanation of the price that will be charged after the trial ends.  Nor does it
3  provide a description of the cancellation policy that applies to the offer.  Nor does
4  it obtain affirmative consent for these automatic charges.

5  24.  When a consumer clicks the "Start Trial" button, the consumer is
6  enrolled in the free trial.  Then, after two weeks, the consumer is automatically
7  enrolled in the Fam paid subscription program and charged $5.95.

8  25.  Consumers reasonably expect that, at the end of the trial, they will not
9  be enrolled in the paid program or charged.  Instead, they reasonably believe that
10 they will only be charged if, following the trial, they decide to enroll in the paid
11 service.  But instead, Gopuff enrolls consumers in the paid service automatically at
12 the end of the free trial, without clearly disclosing this fact to consumers.

13 26.  Consumers can also be enrolled in Fam via the Gopuff website.  The
14 content is similar to the app and deficient for the same reasons.

15 27.  To use Gopuff, consumers create a Gopuff account.  To sign up for an
16 account, consumers see the following screen in the app:



28. As seen in the graphic above, consumers are able to sign up for Go Puff simply by tapping one of the "Sign Up" buttons. Consumers have no reason to scroll down in the app to hunt for additional, hidden terms. And, the app does not require the user to scroll down before clicking a "Sign Up" button.

29. Gopuff's terms are not visible to the consumer before they are able to sign up for an account. Instead, the terms are linked at the very bottom of the page, hidden from view. Viewing the terms requires a consumer to scroll all the

1 way down to the bottom of the page to view them. Only if a consumer happened
2 to scroll down, they would see this:



22     30.     Again, in the app version of the account-creation page, the Terms of
23 Service are at the very bottom of the page, and invisible to the consumer unless
24 they happen to scroll all the way down. Because the app does not require the
25 consumer to scroll, or suggest that important terms are hidden at the bottom,
26 consumers have no reason to scroll down. Thus, consumers sign up for a Gopuff
27 account without ever seeing the linked terms.

31. In addition to being hidden from view (because they require a consumer to scroll), the terms are linked in tiny grey font.

32. Consumers can also be enrolled in Gopuff via the Gopuff website. The content is similar to the app and deficient for the same reasons.

33. In sum, via both the app and its website, Gopuff is violating the ARL in multiple ways. It violates the ARL by failing to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer.

34. Defendant also violates the ARL by charging Plaintiff and class members for automatic renewals or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms.

35. Defendant also violates the ARL by failing to include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

**C.   Gopuff misled and injured Mr. Beer.**

36. Mr. Beer signed up for a 14-day free trial of Fam, through the Gopuff app, on February 21, 2022. When he signed up, he was not aware that, at the end of the trial, Gopuff would automatically charge him $5.95 and enroll him in a renewing monthly subscription. He believed that after the free trial ended, he would have the choice to opt-in if he wanted to pay for the service. In other words, he believed that he was signing up for a free trial, not committing to an automatically renewing subscription. Without his knowledge or consent, at the end of the trial, Gopuff automatically enrolled him in Fam and charged him $5.95 for a monthly subscription. If Mr. Beer had known the truth, he would not have signed

up for a free trial and would not have paid Gopuff the $5.95 monthly subscription fee.

37. Because Mr. Beer did not know that Gopuff was going to charge his card, he did not notice right away that he had been charged. As best as he can recall, sometime around Summer 2022, Mr. Beer was reviewing his accounts and realized that Gopuff had charged him $5.95 multiple times. He looked into how he could get the charge reversed, and it was not clear. So, he resigned himself to the $5.95 charges, until the end of his subscription month. This is not something he would have agreed to, had it been clearly disclosed up front. Before the charge renewed again in October 2022, he was able to change his renewal setting so that he was not charged again.

38. Very recently, Mr. Beer discovered that he had received a confirmation email from Gopuff stating that his card would be charged. But he receives many emails (including many junk emails and a variety of marketing emails from Gopuff); he did not notice these emails when they were sent. And the ARL exists precisely because post-purchase emails are not sufficient; the law requires pre-purchase disclosures and upfront affirmative consent. Mr. Beer and other consumers are not being afforded this legally-required opportunity.

39. Mr. Beer faces an imminent threat of future harm. He likes the Gopuff service and would buy a (limited term, non-renewing) subscription again if he could feel sure that Gopuff would not illegally auto-renew him. But without an injunction, he cannot trust that Gopuff will comply with the ARL.

**V.     Class action allegations.**

**The California Class.**

40. Mr. Beer brings his claims for the following class: all persons who purchased a Fam subscription in California, during the applicable statute of limitations period.

41. The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity & Ascertainability*

42. The proposed class contains members so numerous that it is impractical to bring every individual claim. There are tens or hundreds of thousands of class members.

43. Class members can be identified through Defendant's sales records and public notice.

*Predominance of Common Questions*

44. Common questions of law and fact predominate over individual issues. Common questions of law and fact include, without limitation: (1) whether Gopuff's automatic renewal plans violate the ARL and California consumer protection laws and; (2) restitution needed to compensate Plaintiff and the class, and (3) class-wide injunctive relief necessary to prevent harm to Plaintiff and the class.

*Typicality and Adequacy*

45. Plaintiff's claims are typical of the class. Like the class, Plaintiff was charged for a Fam plan. There are no conflicts of interest between Plaintiff and the class.

*Superiority*

46. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI. Claims.**

**First Cause of Action: False Advertising Law (FAL)**

**(By Plaintiff and the class)**

47. Plaintiff incorporates the facts alleged above.

48. Plaintiff brings this claim individually and for the class.

49. The FAL authorizes a private right of action for any violation of Chapter 1, of which the ARL is a part. *See* Cal. Bus. & Prof. Code § 17535.

50. As alleged in detail above, Defendant violates the ARL. For example, Defendant violates the ARL by failing to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer.

51. Defendant also violates the ARL by charging Plaintiff and class members for automatic renewals or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms.

52. Defendant also violates the ARL by failing to include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

53. Defendant reasonably should know that its ARL violations are misleading to reasonable consumers.

54. Defendant's violations were a substantial factor and proximate cause of economic harm to Plaintiff and class members.

**Second Cause of Action: Unfair Competition Law (UCL)**

**(By Plaintiff and the class)**

55. Plaintiff incorporates the facts alleged above.

56. Plaintiff brings this claim individually and for the class.

*Unlawful*

57. Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable. Defendant committed unlawful practices because, as alleged above and incorporated here, it violated California's Automatic Renewal Law. In addition, as alleged below and incorporated here, Defendant violated the CLRA.

*Unfair*

58. As alleged in detail above, Defendant committed "unfair" acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL.

59. The harm to Plaintiff and the class greatly outweighs the public utility of Defendant's conduct. There is no public utility to illegal automatic renewal practices. This injury was not outweighed by any countervailing benefits to consumers or competition. Illegal auto-renewal practices only injure healthy competition and harm consumers.

60. Plaintiff and the class could not have reasonably avoided this injury. Defendant's representations were deceiving to reasonable consumers like Plaintiff. There were reasonably available alternatives to further Defendant's legitimate business interests, such as complying with the ARL.

61. Defendant violated established public policy by violating the ARL. The unfairness of this practice is tethered to a legislatively declared policy (that of the FAL and ARL).

62. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

*Deceptive*

63. As alleged in detail above, Defendant committed "deceptive" acts by enrolling consumers in automatically recurring subscriptions, without providing sufficient disclosures or obtaining affirmative consent. In addition, Defendant committed "deceptive" acts by stating that consumers could "cancel anytime" when in fact this is not true.

64. Defendant's representations and deficient ARL disclosures were misleading to Plaintiff and other reasonable consumers.

65. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

\* \* \*

66. Defendant's violative conduct was a substantial factor and proximate cause of economic harm to Plaintiff and class members.

**Third Cause of Action: Consumers Legal Remedies Act (CLRA)**

**(By Plaintiff and the class)**

67. Plaintiff incorporates the facts alleged above.

68. Plaintiff brings this claim individually and for the class.

69. The Fam enrollment process results in the sale of services to consumers, i.e., grocery delivery services. The program is a $5.95 pre-payment for a month of grocery delivery.

70. Defendant violated Cal. Civ. Code §1770, (a)(5) by representing that its subscription plans have certain characteristics that they do not have. As alleged in detail above, Defendant represented that its free-trial program was just that, a free-trial, and not an agreement to be automatically enrolled in a recurring subscription plan. Defendant also represents that the $5.95/month charge is just for a month, when in reality it is an automatically recurring subscription. Defendant additionally does not present cancellation policies, and consumers

cannot cancel, as they are automatically charged and Gopuff will not issue a refund after that point.

71. Defendant violated Cal. Civ. Code §1770, (a)(9) by advertising services with the intent not to sell them as advertised. As alleged in detail above, Defendant advertised a "free trial" of Fam but intended to automatically enroll consumers in a recurring subscription plan. Defendant also represents that the $5.95/month charge is just for a month, when Defendant intends to sell the plan as an automatically recurring subscription. Defendant additionally did not advertise its cancellation policy, and Defendant intended to automatically charge consumers and not issue a refund upon cancellation.

72. Defendant's violative conduct was a substantial factor and proximate cause of economic harm to Plaintiff and class members.

73. Plaintiff and class members seek injunctive relief.

74. CLRA § 1782 NOTICE. On October 7, 2022, a CLRA demand letter was sent to Defendant's California registered agent and Defendant's headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the class within 30 days of receipt, Plaintiff and the class will seek all monetary relief allowed under the CLRA.

75. A CLRA venue declaration is attached.

## VII. Relief.

76. Plaintiff seeks the following relief for himself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the class;
- Restitution, and other just equitable relief;

- An injunction;
- Pre- and post-judgment interest;
- Any additional relief that the Court deems reasonable and just.

Dated: October 11, 2022

By: /s/ Christin Cho

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

## Demand for Jury Trial

Plaintiff and the class demand the right to a jury trial on all claims so triable.

Dated: October 11, 2022

By: /s/ Christin Cho

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*