**DOVEL & LUNER, LLP**
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

**DUANE MORRIS LLP**
Courtney L. Baird (SBN 234410)
E-mail: clbaird@duanemorris.com
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
Telephone: 619 744 2285
Facsimile: 619 923 3115

Ayad Mathews (SBN 339785)
E-mail: amathews@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile: 619 744 2201

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BEER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>GOBRANDS, INC.,<br><br>*Defendant.* | Case No. 2:22-cv-7386-FMO-RAO<br><br>**Joint Notice of Motion and Motion for Class Certification and Preliminary Approval of Class Action Settlement**<br><br>Date: August 17, 2023<br>Time: 10:00 a.m.<br>Dept: Courtroom 6D<br>Judge: Hon. Fernando M. Olguin |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 17, 2023, at 10:00 a.m., in Courtroom 6D of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Plaintiff Jonathan Beer and Defendant GoBrands, Inc. will and hereby do move this Court for entry of an order:

1.    Granting preliminary approval of the proposed class action settlement set forth in the Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1;

2.    Preliminarily certifying, for settlement purposes only, a settlement class in this matter that is comprised of:

> All California residents who signed up for a Gopuff "Fam" free trial and who thereafter were enrolled in the Fam program and charged at least one monthly subscription fee following the end of the free trial, during the Class Period;

3.    Preliminarily appointing Plaintiff Jonathan Beer as class representative for settlement purposes;

4.    Preliminarily appointing Dovel & Luner LLP as Class Counsel;

5.    Preliminarily finding that the terms of the Settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

6.    Approving that the proposed Notice Plan complies with the requirements of Rule 23 and due process, and that the Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines in the Agreement.

This Motion is based on this Notice of Motion and Motion for Class Certification and Preliminary Approval of Class Action Settlement; the Declarations of Simon Franzini, Jonathan Beer, and Steven Weisbrot, filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

Dated: July 19, 2023

By: */s/ Simon Franzini*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

By: */s/ Courtney Baird*
Courtney L. Baird (SBN 234410)
DUANE MORRIS LLP
E-mail: clbaird@duanemorris.com
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
Telephone: 619 744 2285
Facsimile: 619 923 3115

Ayad Mathews (SBN 339785)
DUANE MORRIS LLP
E-mail: amathews@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile: 619 744 2201

*Attorneys for Defendant*

Motion for Class Certification and Preliminary
Approval of Class Action Settlement

Case No. 2:22-cv-7386-FMO-RAO

# Table of Contents

I.   Introduction..................................................................................................1

II.  Factual background.......................................................................................1

   A.   The Automatic Renewal Law and Mr. Beer's allegations..................1

   B.   Settlement negotiations and mediation................................................2

   C.   The Settlement.....................................................................................3

      1.   Class Definition...........................................................................3

      2.   Benefits to Settlement Class Members.........................................3

      3.   Scope of the Release....................................................................6

      4.   Service Award..............................................................................7

      5.   Attorneys' Fees and Expenses.....................................................7

      6.   Notice and Administration Expenses. ..........................................8

III. The Settlement should be preliminarily approved. ......................................8

   A.   The Court should conditionally certify the Settlement Class for settlement purposes...........................................................................9

      1.   The Proposed Class is sufficiently numerous..............................10

      2.   There are questions of law and fact common to the class................10

      3.   Mr. Beer's claims are typical to those of the Settlement Class..........11

      4.   Mr. Beer and proposed Class Counsel have fairly and adequately represented the class's interests. .........................................12

      5.   The conditional Class meets the requirements of Rule 23(b)(3)..............................................................................13

   B.   The proposed Settlement is fundamentally fair, adequate, and reasonable.........................................................................................15

      1.   The Settlement Agreement is the result of non-collusive arm's length negotiations..................................................................15

      2.   The Settlement provides excellent relief to Class Members, especially given the significant risks of continued litigation. .............17

i

3.    The Settlement provides a substantial benefit to the
Settlement Class and is reasonable given Defendant's
maximum potential liability. ...................................................19

4.    Experienced counsel have determined that the Settlement is
fair and adequate. ......................................................................21

5.    The Settlement Fund will be fairly distributed amongst
Settlement Class Members. ........................................................22

C.    The Court should approve the proposed notice plan...................................23

IV.    Conclusion. ................................................................................................................24

Motion for Class Certification and Preliminary                 Case No. 2:22-cv-7386-FMO-RAO
Approval of Class Action Settlement

# Table of Authorities

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.,*
  731 F.3d 952 (9th Cir. 2013) ......................................................................... 10

*Ahmed v. HSBC Bank USA,*
  2019 U.S. Dist. LEXIS 104401 (C.D. Cal. June 21, 2019) ........................ 22, 23

*All Consumer & Reseller Actions (In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.),*
  2016 U.S. Dist. LEXIS 99071 (N.D. Cal. July 26, 2016) ................................ 16

*Allen v. Bedolla,*
  787 F.3d 1218 (9th Cir. 2015) ...................................................................... 16

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................ 9, 24

*Arnold v. Hearst Mag. Media, Inc.,*
  2021 U.S. Dist. LEXIS 25706 (S.D. Cal. Feb. 10, 2021) ................................. 2

*Barbosa v. Cargill Meat Sols. Corp,*
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................................ 12, 15

*Bellinghausen v. Tractor Supply Co.,*
  306 F.R.D. 245 (N.D. Cal. 2015) ................................................................... 23

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) ................................................................ 21

*Briseño v. Henderson,*
  998 F.3d 1014 (9th Cir. 2021) ...................................................................... 16

*Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.,*
  249 F.R.D. 334 (N.D. Cal. 2008) ................................................................... 12

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) ...................................................................................... 14

*Craft v. Cnty. Of San Bernardino,*

624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................7, 17

*Cty. of L.A. v. Jordan,*

459 U.S. 810 (1982) .................................................................................10

*Custom LED, LLC v. eBay, Inc.,*

2013 U.S. Dist. LEXIS 165881 (N.D. Cal. Nov. 20, 2013) ....................20

*Hanlon v. Chrysler Corp.,*

150 F.3d 1011 (9th Cir. 1998) ...............................................10, 11, 13, 14

*Hesse v. Sprint Corp.,*

598 F.3d 581 (9th Cir. 2010) .....................................................................7

*In re Hyundai and Kia Fuel Econ. Litig.,*

926 F.3d 539 (9th Cir. 2019) ..................................................................8, 9

*In re Omnivision Technologies, Inc.,*

559 F. Supp. 2d 1036 (N.D. Cal. 2007) .....................................................7

*In re Tableware Antitrust Litig.,*

484 F.Supp.2d 1078 (N.D. Cal. 2007) ......................................................19

*In re Wireless Facilities, Inc.,*

253 F.R.D. 607 (S.D. Cal. 2008) ...............................................................9

*Jordan v. Cty. of L.A.,*

669 F.2d 1311 (9th Cir. 1982) ..................................................................10

*Just Film Inc. v. Buono,*

847 F.3d 1108 (2017) ...............................................................................14

*Kissel v. Code 42 Software, Inc.,*

2017 U.S. Dist. LEXIS 223526 (C.D. Cal. Oct. 4, 2017) ........11, 14, 15, 17, 20

*Larsen v. Trader Joe's Co.,*

2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) ........................19

*Leyva v. Medline Indus., Inc.,*

716 F.3d 510 (9th Cir. 2013) ...................................................................15

*Maxin v. RHG & Co.,*

iv

2018 U.S. Dist. LEXIS 26795 (S.D. Cal. Feb. 16, 2018) ...................................... 22

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.,*
2021 U.S. Dist. LEXIS 87268 (N.D. Cal. May 5, 2021) .................................... 18

*Moses v. N.Y. Times Co.,*
2021 U.S. Dist. LEXIS 209937 (S.D.N.Y. Sep. 13, 2021) ................................ 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 19

*Navarrete v. Sprint United Mgmt. Co.,*
2021 U.S. Dist. LEXIS 40398 (C.D. Cal. Mar. 2, 2021) .................................. 21

*Neary v. Regents of University of California,*
3 Cal. 4th 273 (1992) ...................................................................................... 19

*Noll v. eBay, Inc.,*
309 F.R.D. 593 (N.D. Cal. 2015) .................................................................... 20

*Perks v. ActiveHours, Inc.,*
2021 U.S. Dist. LEXIS 57272 (N.D. Cal. Mar. 25, 2021) ..................... 16, 22, 23

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.),*
779 F.3d 934 (9th Cir. 2015) ................................................... 6, 17, 21, 22

*Rodriguez v. W. Publishing,*
563 F.3d 948 (9th Cir. 2009) .......................................................................... 16

*Samson v. Nama Holdings, LLC,*
2009 U.S. Dist. LEXIS 130663 (C.D. Cal. May 20, 2009)................................ 18

*Satchell v. Fed. Express Corp.,*
2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007)................................. 16

*SEB Inv. Mgmt. AB v. Symantec Corp.,*
335 F.R.D. 276 (N.D. Cal. 2020) .................................................................... 12

*Sellers v. JustAnswer LLC,*
73 Cal. App. 5th 444 (2021) .....................................................................1, 15

*Staton v. Boeing Co.,*

327 F.3d 938 (9th Cir. 2003) ......................................................................... 8, 9, 12

*Stearns v. Ticketmaster Corp.,*

655 F.3d 1013 (9th Cir. 2011) ................................................................................ 13

*Tait v. BSH Home Appliances Corp.,*

289 F.R.D. 466 (C.D. Cal. 2012) ............................................................................ 10

*Taylor v. Populus Grp., LLC,*

2022 U.S. Dist. LEXIS 137518 (S.D. Cal. Aug. 1, 2022) ..................................... 21

*Villafan v. Broadspectrum Downstream Servs.,*

2021 U.S. Dist. LEXIS 249763 (N.D. Cal. Apr. 8, 2021) ....................................... 9

*Wahl v. Yahoo! Inc.,*

2018 U.S. Dist. LEXIS 195287 (N.D. Cal. Nov. 15, 2018) ........................... 12, 14, 23

*Wal-Mart Stores, Inc. v. Dukes,*

564 U.S. 338 (2011) ............................................................................................... 10

*Williamson v. McAfee, Inc.,*

2017 U.S. Dist. LEXIS 15838 (N.D. Cal. Feb. 3, 2017) ....................................... 21

*Wolin v. Jaguar Land Rover N. Am., LLC,*

617 F.3d 1168 (9th Cir. 2010) ............................................................................... 11

*Xiufang Situ v. Leavitt,*

240 F.R.D. 551 (N.D. Cal. 2007) ........................................................................... 10

**Statutes**

Cal. Bus. & Prof. Code § 17600 .............................................................................. 1

Cal. Bus. & Prof. Code § 17601 ............................................................................ 11

Cal. Civ. Code § 1542 .............................................................................................. 7

**Rules**

Fed. R. Civ. P. 23(a)(1) .......................................................................................... 10

Fed. R. Civ. P. 23(a)(2) .......................................................................................... 10

Fed. R. Civ. P. 23(a)(3) .......................................................................................... 11

Fed. R. Civ. P. 23(a)(4) .......................................................................................... 12

Fed. R. Civ. P. 23(b)(3) .................................................................. 13, 14, 15

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................24

Fed. R. Civ. P. 23(e)(2)(D)......................................................................22

**Treatises**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.27 (4th ed. 2002)..........9

Motion for Class Certification and Preliminary          Case No. 2:22-cv-7386-FMO-RAO
Approval of Class Action Settlement

## Memorandum of Points and Authorities

### I.   Introduction.

The Parties have reached a hard-fought class-wide resolution of this class action that will provide substantial relief to Settlement Class Members. As discussed below, the Settlement meets all the criteria for preliminary approval pursuant to Rule 23(e)(1) and Ninth Circuit precedent. The proposed Settlement Class is cohesive, and the Settlement itself represents an excellent outcome for Settlement Class Members. Accordingly, the Parties request that the Court preliminarily approve the Settlement, approve the form and manner of notice, preliminarily certify the Settlement Class, appoint Class Counsel and the Class Representative, and schedule a final Fairness Hearing.

### II.   Factual background.

#### A.   The Automatic Renewal Law and Mr. Beer's allegations.

California's Automatic Renewal Law was enacted to prevent companies from signing consumers up for automatically renewing subscriptions without their knowledge or consent. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 458 (2021) (in enacting the ARL, the legislature found that "[i]t has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to."). The law requires that companies provide "clear and conspicuous" disclosures about any autorenewal plan and obtain consumers' "affirmative consent" for membership in any renewing subscription. Cal. Bus. & Prof. Code § 17600.

Gopuff is an e-commerce and brick and mortar retail service that makes its consumer goods available for delivery. Gopuff Fam Subscription Program ("Fam") is a membership service that complements Gopuff's services by providing customers with a variety of benefits, including free delivery, no regulated product fees, 2x Puff Points, and $10 off the first three orders, in exchange for a small monthly subscription fee. Before using Gopuff's services, including Fam, customers must register for a Gopuff account. Exhibit 1, "Settlement Agreement" §1.1. When the free trial ends, consumers are enrolled

1

in the automatically renewing Fam subscription and charged a monthly fee (during the class period, the fee for the majority of consumers was $5.95, but it increased to $7.99 in October 2022). Complaint ¶¶ 3-4; Franzini Decl. ¶15.

Mr. Beer signed up for a 14-day free trial of Fam in February 2022. Complaint ¶36; Settlement Agreement §1.2. He alleges that when he signed up, GoBrands did not provide him with the clear and conspicuous notice required by the ARL, nor did it seek his affirmative consent to be automatically enrolled in Fam. Complaint ¶36; Settlement Agreement §1.3. As a result, he alleges that he was not aware that the trial would be automatically converted into a monthly subscription, or that he would be charged a monthly fee for the service. Complaint ¶¶ 18, 36. And he alleges that other consumers were injured in the same way. *Id.* ¶18.

In October 2022, Mr. Beer brought this lawsuit against GoBrands, alleging that it violated the ARL, and bringing claims under California's False Advertising Law, Unfair Competition Law, and Consumer Legal Remedies Act. Settlement Agreement §1.3; *see Arnold v. Hearst Mag. Media, Inc.*, 2021 U.S. Dist. LEXIS 25706, at *17 (S.D. Cal. Feb. 10, 2021) ("A consumer who has been harmed by a violation of the ARL may bring a claim pursuant to other consumer protection statutes, including the FAL, CLRA, and UCL.").

Defendant has denied, and continues to deny, all material allegations of the Complaint, including any violation of the ARL or that any customer suffered any harm or injury as a result of Fam. Settlement Agreement §1.6.

**B.    Settlement negotiations and mediation.**

Settlement negotiations were arduous, contentious, and well-informed. Franzini Decl. ¶9. The Parties began discussing early resolution of the case in December 2022, and agreed to a private mediation. *Id.* The Parties selected JAMS mediator Bruce Friedman and scheduled a mediation for March 21, 2023. *Id.*; Settlement Agreement §1.4. Prior to the mediation, the parties exchanged pertinent information regarding the allegations and other information necessary for productive settlement discussions and exchanged mediation briefs setting forth the Parties' positions on any potential liability and damages

2

1  calculations. Franzini Decl. ¶10; *see* Settlement Agreement §14.17 (explaining that the
2  Parties conducted a full investigation of the claims).

3  On March 21, 2023, the Parties participated in a mediation before Mr. Friedman,
4  and then continued those negotiations with the help of the mediator in the months that
5  followed. Franzini Decl. ¶11; Settlement Agreement §1.4. The Parties negotiated the
6  benefits due to the Settlement Class through the mediator, and finalized those terms prior
7  to reaching any agreement on attorneys' fees, costs, and a service award to Mr. Beer.
8  Franzini Decl. ¶11. And at no point did the Parties negotiate any clear sailing provision—
9  as discussed below, Defendant is free to challenge proposed Class Counsel's fee request.
10 *Id.*; Settlement Agreement §8.1.

11 The Parties reached an agreement on May 18, 2023, and began compiling a term
12 sheet and drafting the terms of the full Settlement Agreement, including the contents of
13 the Notice and Claim Form. Franzini Decl. ¶12; Settlement Agreement §1.4. The
14 Settlement Agreement is attached to this Motion as Exhibit 1.

15 **C.    The Settlement.**

16 **1.    Class Definition.**

17 The Settlement Class consists of all California residents who signed up for a
18 Gopuff "Fam" free trial and who thereafter were enrolled in the Fam program and were
19 charged at least one monthly subscription fee following the end of the free trial, during
20 the Class Period. Settlement Agreement §2.43.

21 This class differs slightly from the class proposed in the Complaint to account for
22 the fact that some consumers who signed up for a Fam free trial canceled before they
23 were charged a monthly subscription fee, and so were not injured by Defendant's alleged
24 deception. Complaint ¶40 (defining the proposed class).

25 **2.    Benefits to Settlement Class Members.**

26 <u>Monetary Relief</u>

27 The Settlement Agreement requires GoBrands to make available a $400,000 non-
28 reversionary common fund. Settlement Agreement §2.46. This fund will be used to

3

provide payments to Settlement Class Members, as well as pay for administration costs, attorneys' fees and costs to Plaintiff's counsel, and a service award to Plaintiff. *Id.*

The Settlement Agreement provides that Settlement Class Members will receive payment in one of two ways, at their option: (1) Class Members can file a claim and receive a cash payment, or, (2) if Class Members do not file a claim, they will automatically receive Gopuff credit. Settlement Agreement §§2.7-2.10, 5.2, 7.1, 7.2. The Parties anticipate that payments will be approximately equal to the subscription fee that Settlement Class Members were charged for the first paid month of their Fam subscription. Settlement Agreement §5.2; Franzini Decl. ¶15. Fam subscriptions were $5.95 from July 2021—when the Fam autorenewal scheme began in California—through October 2022. Franzini Decl. ¶15. Gopuff increased the rate to $7.99 starting on October 11, 2022. *Id.* Thus, the Parties expect that Settlement Class Members will receive a payment of approximately $5.95 or $7.99 depending on when they signed up for a Fam free trial. Settlement Agreement §5.2. Payments will be the same amount regardless of whether a Settlement Class Member receives payment in cash or credit. *Id.*

If, after payment of administration costs, attorneys' fees and costs, and a service award, there are insufficient funds in the Settlement Fund to make payments to Settlement Class Members in accordance with their initial subscription fee, the payments to Class Members will be reduced pro rata. *Id.* This outcome is unlikely, however. As discussed further below, the Parties anticipate that over $244,000 of the Settlement Fund will be used exclusively to make payments to Settlement Class Members (the $400,000 fund minus administration fees, attorneys' fees and costs, and an incentive award to Plaintiff). *See* §III(B)(2) (discussing the adequacy of the net Settlement Fund). And GoBrands' records reveal that there are approximately 36,633 Settlement Class Members. Franzini Decl. ¶16; Settlement Agreement §2.46.[1] GoBrands' data reveals that

---

[1] Under the Settlement Agreement, Defendant agrees to prepare a Class List for the Settlement Administrator. Settlement Agreement §6.2. The Parties expect that the total class will consist of the 36,633 Members identified by Defendant's data. Franzini

approximately 77% of Settlement Class Members paid the lower $5.95 subscription fee in their first month, and approximately 23% paid the higher $7.99 fee. Franzini Decl. ¶16.

Based on these numbers, the Settlement Fund is more than large enough to ensure that Settlement Class Members will receive payment in accordance with their first subscription fee. If 77% of the Settlement Class receives $5.95 and 23% receives $7.99, the total cost will be approximately $235,155. In this situation—where there are funds remaining in the Settlement Fund after distribution and payment of administration costs, attorneys' fees and costs, and a service award—the excess funds will be distributed to Settlement Class Members pro rata. Settlement Agreement §5.2. Under no circumstances will funds in the Settlement Fund revert back to GoBrands. *Id.* §2.46.

Settlement Class Members will have the option to file a claim and receive their payment from the Settlement Fund in cash. *Id.* §§2.8-2.9. Settlement Class Members can choose to receive cash payments through an online service like PayPal, via a prepaid MasterCard, or in the form of a physical check delivered by the Settlement Administrator. *Id.* §§2.7, 6.5(e); *Id.*, Exhibit A (claim form showing that Class Members can pick between several options).[2]

Gopuff credits will be automatically distributed to any Settlement Class Member who does not file a claim. Defendant will distribute these credits directly into users'

---

Decl. ¶16. Still, the Parties have agreed to confirmatory discovery on the size of the Settlement Class. Settlement Agreement §2.46. If discovery reveals more than 40,000 total Settlement Class Members, the common fund will increase proportionally to account for the larger Class. *Id.*

[2] The Settlement Agreement contemplates a *cy pres* award, providing that any funds resulting from expired Benefit Checks will be sent by the Settlement Administrator to Feeding America and will not revert to Defendant. Settlement Agreement §6.5(e). Feeding America is a nonprofit organization that is a nationwide network of more than 200 food banks that feed more than 46 million people through food pantries, soup kitchens, shelters, and other community-based agencies. Feeding America's goals are consistent with the interests of the class members, who all signed up for Defendant's consumer goods and/or food delivery services. Neither Party, nor their counsel, have any relationship with Feeding America.

accounts, or will distribute the credits by email for Settlement Class Members who do not have active Gopuff accounts. *Id.* §7.1. Credits can be used on any products available on Gopuff, and because Gopuff sells a diverse array of groceries and other consumer items, the credits offer real cash-equivalent value to consumers. *Id.* §2.8; *see Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 952 (9th Cir. 2015) (Walmart gift cards provided real value to consumers because they offered "them a set amount of money to use on their choice of a large number of products from a large retailer."). GoBrands will also waive any minimum order requirement imposed on users for an order in which a user utilizes Gopuff credit received in this Settlement. Settlement Agreement §2.8. Plus, the credits have no expiration date. *Id.*

<u>Non-Monetary Programmatic Relief</u>

The Settlement Agreement also provides for non-monetary relief benefiting Settlement Class Members. Settlement Agreement §5.1. On February 6, 2023, after this action was filed, Defendant took steps to address Plaintiff's allegations with respect to Defendant's California's ARL notice. In particular, Defendant re-designed its Fam disclosures to ensure that consumers have the requisite ARL notice.

The Settlement Agreement allows proposed Class Counsel to enforce continued and perfect compliance. *Id.* In particular, the Agreement states that:

> If Class Counsel believes that any additional changes are necessary for compliance with the ARL, they shall provide written notice to Defendant of the specific facts and circumstances of any alleged non-compliance and discuss in good faith with Defendant appropriate changes, if any, to the then-existing online content, to the extent agreed, Defendant will then have 90 days from the date of such agreement to bring the content into compliance with this Section 5.1 and will not be deemed to be in breach of this Agreement if it does so within such 90-day period. If no agreement is reached, Class Counsel may apply to the Court to enforce the Agreement. *Id.*

**3.    Scope of the Release.**

The Settlement Agreement calls for a narrowly tailored release of only those claims alleged in the Complaint—CLRA, UCL, and FAL claims related to alleged Automatic

Renewal Law violations—and other claims that arise from the same facts alleged in the Complaint. Settlement Agreement §11.2. Settlement Class Members retain their rights against Defendant to bring any claims disconnected from the facts and allegations in this lawsuit. The release does not include a waiver under California Civil Code § 1542.

The release avoids inefficient and duplicative litigation and complies with Ninth Circuit precedent requiring that released claims be based on the "identical factual predicate." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

### 4. Service Award.

Plaintiff's Counsel intends to request a modest service award of $1,500 to compensate Mr. Beer for his exemplary service as class representative. Settlement Agreement §8.3; Beer Decl. ¶8. Mr. Beer has spent substantial time on this action: he assisted with the initial factual investigation, consulted on the drafting of the Complaint, provided further information in the lead up to mediation, has been diligent in responding to Counsel, and has stayed informed of the status of the action, including settlement. Beer Decl. ¶7. The service award will be paid from the Settlement Fund and is subject to the Court's approval. *Id.* ¶8; Settlement Agreement §8.3. GoBrands maintains the right to object to the award, and the Settlement is *not* contingent on the Court granting the requested award. Settlement Agreement §8.3; Beer Decl. ¶8.

### 5. Attorneys' Fees and Expenses.

Proposed Class Counsel intends to apply to the Court for its reasonable attorneys' fees, not to exceed 25% ($100,000) of the Settlement Fund, plus modest expenses not to exceed $9,000. Franzini Decl. ¶18. This request is in line with Ninth Circuit precedent, and seeks a lower percentage of the fund than many common fund fee awards. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007) ("[N]early all common fund awards range around 30%" and generally "the rate should be set at 30%."); *Craft v. Cnty. Of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often result in fees above 25%."). And, Counsel anticipates that fees of $100,000 will be less than its lodestar in this action. Franzini Decl.

¶18. Counsel will apply for fees and costs in a separate motion.

### 6.    Notice and Administration Expenses.

The Parties request that the Court appoint Angeion Group ("Angeion") as Settlement Administrator. Settlement Agreement §6.1. The Parties selected Angeion after Plaintiff solicited a bid. Franzini Decl. ¶24. Angeion anticipates that administration will cost $45,300. Weisbrot Decl. ¶32.

The Parties will provide Angeion with a Class List consisting of Class Members' email addresses associated with their Gopuff Fam accounts and the delivery address associated with Class Members' most recent Gopuff orders. Settlement Agreement §9.2. The Settlement Administrator will provide direct notice to all Settlement Class Members. Weisbrot Decl. ¶13; Settlement Agreement §9.2. GoBrands has an associated email address for each account holder, so the Parties anticipate that virtually all Settlement Class Members will receive notice in this manner. Franzini Decl. ¶26. For Settlement Class Members whose email notices bounce back, the Settlement Administrator will provide direct notice by mail. Settlement Agreement §9.2; Weisbrot Decl. ¶18. In sum, the Parties anticipate that virtually all Settlement Class Members will receive direct notice. Franzini Decl. ¶26. The Settlement Administrator will also create a Settlement Website, through which Settlement Class Members can submit a Claim Form electronically, and which will include detailed information concerning the Settlement, including a multi-point FAQ page. Settlement Agreement §4.5(c); Weisbrot Decl. ¶20.

### III.    The Settlement should be preliminarily approved.

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). Under Rule 23(e), approving a class action settlement is a two-step process: preliminary approval and then a fairness hearing. In the first stage, relevant here, the Court asks two questions. First, the Court must determine whether a Rule 23 settlement class may be conditionally certified. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). And second, the Court considers whether a proposed

8

settlement is "fundamentally fair, adequate, and reasonable." *Id.* at 959.

In making this second determination, a Court considers a variety of factors, including the requirements of Rule 23(e)(2). But, a "court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class." *Villafan v. Broadspectrum Downstream Servs.*, 2021 U.S. Dist. LEXIS 249763, at *14 (N.D. Cal. Apr. 8, 2021).

Here, as explained below: (1) the proposed Settlement Class is cohesive and is fit for conditional approval, and (2) the Settlement is fundamentally fair, adequate, and reasonable. Thus, the Settlement warrants preliminary approval.

## A. The Court should conditionally certify the Settlement Class for settlement purposes.

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *see* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), §11.27 (4th ed. 2002) ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."). To conditionally certify a class, a court must determine that the proposed Settlement Class satisfies the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Unlike when certifying a class for litigation, courts need not consider "manageability" when conditionally certifying a settlement class. *In re Hyundai & Kia Fuel Econ. Litig*, 926 F.3d at 556-57 ("[M]anageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

Here, the proposed class meets all the requirements of Rule 23, and the Court should conditionally certify the Settlement Class.

9

### 1.    The Proposed Class is sufficiently numerous.

Rule 23(a)(1) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). And courts find that joinder is impracticable where a class has more than forty members. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement."). Here, the Settlement Class consists of approximately 36,633 members. Franzini Decl. ¶16. This more than satisfies Fed. R. Civ. P. 23(a)(1). *See Jordan v. Cty. of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982) (vacated on other grounds, 459 U.S. 810 (1982)) (class sizes of 39, 64, and 71 sufficient to satisfy the numerosity requirement).

### 2.    There are questions of law and fact common to the class.

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do.").

Common questions must be "capable of classwide resolution." *Dukes*, 564 U.S. at 338. In other words, common questions must have a common answer that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Thus, commonality is "easily satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007).

Here, the commonality requirement is satisfied because Settlement Class Members' claims all stem from the same factual circumstances and legal theories: all Class Members signed up for a Fam free trial that was converted into an automatically renewing monthly subscription. Complaint ¶¶47-75 (asserting uniform legal claims on behalf of all class members); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("All questions of fact and law need not be common to satisfy the rule. The existence of shared legal

issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").

As a result, there are common questions of law and fact that will generate common answers for all Settlement Class Members. These include: (1) whether GoBrands failed to provide clear and conspicuous notice that the Fam trial automatically renewed in visual proximity to the button consumers pressed to start their trial (2) whether GoBrands charged Class Members for an automatically renewing subscription without first receiving their affirmative consent to do so and (3) whether GoBrands' Terms of Service laid out its automatic renewal terms as required by Cal. Bus. & Prof. Code § 17601. Thus, Class Members' claims will turn on identical factual and legal questions, and Rule 23(a)(2) is satisfied. *See Kissel v. Code 42 Software, Inc.*, 2017 U.S. Dist. LEXIS 223526, at *11-12 (C.D. Cal. Oct. 4, 2017) (the commonality requirement was satisfied in an automatic renewal case where plaintiff's allegations raised common questions as to whether the defendant violated the ARL); *Moses v. N.Y. Times Co.*, 2021 U.S. Dist. LEXIS 209937, at *4 (S.D.N.Y. Sep. 13, 2021) (same).

### 3.    Mr. Beer's claims are typical to those of the Settlement Class.

Rule 23(a)(3) requires the class representative's claims or defenses be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). And this standard is "permissive,"—claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Mr. Beer's claims are typical of the Settlement Class. He alleges that he, like all Settlement Class Members, signed up for a Fam free trial, and that GoBrands converted that trial into an automatically renewing monthly subscription without providing him sufficient notice. Complaint ¶¶36-38. And he alleges that, like other Settlement Class Members, GoBrands charged him subscription fees without obtaining

his affirmative consent. *Id.* So, his claims "arose from the same … course of conduct that gave rise to the claims of other class members, thus satisfying the typicality requirement." *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020); *see Wahl v. Yahoo! Inc.*, 2018 U.S. Dist. LEXIS 195287, at *7 (N.D. Cal. Nov. 15, 2018) (holding, in a case involving the ARL, that "[t]he named Plaintiff's claim is typical of those of the class members, as he is a California resident who purchased an annual subscription to Rivals.com and was charged for automatic renewal of the subscription.").

### 4.    Mr. Beer and proposed Class Counsel have fairly and adequately represented the Class's interests.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts measure adequacy using two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). And "[a]dequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Here, as explained above, Mr. Beer has the same claims as all Settlement Class Members. *See* §III(A)(3). He has no separate or antagonistic interests to those of the proposed Settlement Class, and has the same interest in recovering all available damages. Beer Decl. ¶6; *Barbosa v. Cargill Meat Sols. Corp*, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("The adequacy-of-representation requirement is met here because Plaintiffs have the same interests as the absent Class Members[.] Further, there is no apparent conflict of interest between the named Plaintiffs' claims and those of the other Class Members' – particularly because the named Plaintiffs have no separate and individual claims apart from the Class."). Plus, Mr. Beer has diligently assisted his counsel in litigating this dispute. *Id.* ¶7. He assisted in the initial factual investigation and provided facts concerning his Gopuff Fam free trial; reviewed the Complaint and consulted with

counsel on his experiences with Gopuff Fam; reviewed and signed a non-disclosure agreement to allow for a productive mediation; consulted with counsel in the lead up to mediation and provided further information about his purchase; made himself available during the mediation for any questions that might arise; discussed the mediation and potential class-wide resolution with counsel; evaluated and agreed to the resolution that the Parties agreed to; and reviewed and agreed with the terms of the Settlement Agreement. *Id.* In short, Mr. Beer took his role seriously, and will continue vigorously pursuing relief on behalf of the Settlement Class. *Id.* ¶6. Thus, he should be appointed class representative for settlement purposes.

Mr. Beer's counsel—Dovel & Luner LLP—has also diligently investigated and litigated this case, and achieved an excellent result for the Settlement Class. Counsel has significant experience litigating and settling complex cases, including class actions, and is well-versed in the applicable statutes and causes of action at issue here. Franzini Decl. ¶¶4-7. Plus, counsel has dedicated substantial time and resources to this case on a contingency basis while facing a real risk of recovering nothing. In sum, proposed Class Counsel has vigorously prosecuted this case and will continue to do so.

**5.     The conditional Class meets the requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), conditional certification is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) asks whether (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the proposed Settlement Class meets both requirements.

<u>Common questions predominate in the Settlement Class</u>. "The predominance inquiry … asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). Thus, where "common questions present a significant aspect of the case and they can be

resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, Mr. Beer alleges that—by signing consumers up for an automatic subscription without their knowledge or consent—GoBrands acted unlawfully towards all Settlement Class Members in the same way. Thus, the determination of whether GoBrands violated the ARL would establish its liability on a class-wide basis, and predominates over any individual questions. *See Wahl v. Yahoo! Inc.*, 2018 U.S. Dist. LEXIS 195287, at *8 (N.D. Cal. Nov. 15, 2018) ("The common question in this case — whether Yahoo violated the ARL by automatically renewing subscriptions to Rivals.com without statutorily required notice — predominates").

Plus, the alleged class damages are directly traceable to GoBrands' allegedly unlawful conduct. *See Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Mr. Beer alleges that Settlement Class Members suffered damages because they were charged subscription fees without their consent. Complaint ¶¶18, 36 ("If Mr. Beer had known the truth, he would not have signed up for a free trial and would not have paid Gopuff the $5.95 monthly subscription fee."). Thus, damages can be reasonably estimated as the cost of the subscription fees charged to consumers—and this theory is directly traceable to GoBrands' allegedly unlawful behavior. *See Kissel v. Code 42 Software, Inc.*, 2017 U.S. Dist. LEXIS 223526, at *15 (C.D. Cal. Oct. 4, 2017) ("[C]lass members' claims turn on the common practices of Code42 in failing to comply with the Automatic Renewal Law. This common question and the common legal remedies will predominate.").

A class action is the superior mechanism for resolution of this dispute. The superiority requirement asks whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class actions are superior where the "'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims." *Just Film Inc. v. Buono*, 847 F.3d 1108, 1123 (2017). Thus, where "class members' potential

14

individual monetary recovery" is small and "class certification may be the only feasible means for them to adjudicate their claims," "class certification is [] the superior method of adjudication." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).

Here, were Settlement Class Members—whose subscription fees were $5.95 or $7.99—to litigate their claims on an individual basis, they would quickly spend more on litigating than they could hope to recover in damages. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 479 (2021) ("Although Plaintiffs could at least theoretically address their ARL claim through individual arbitration, those claims are not likely worth pursuing on an individual basis as the value of each individual claim is small."); *Kissel v. Code 42 Software, Inc.*, 2017 U.S. Dist. LEXIS 223526, at *16 (C.D. Cal. Oct. 4, 2017) (finding, in an ARL case, that "litigation costs would likely exceed potential recovery if each Class Member litigated individually."). Plus, the filing of separate suits by tens of thousands of class members "would create an unnecessary burden on judicial resources." *Barbosa*, 297 F.R.D. at 445.

As an additional matter, there is no indication here that any individual litigation related to Mr. Beer's claims is currently pending in other forums, nor is there reason to believe this particular forum is undesirable. Fed. R. Civ. P. 23(b)(3)(A)-(D). So, there is no reason to believe that class treatment is unwarranted.

* * *

In short, the proposed Settlement Class satisfies the requirements of Rule 23 and should be conditionally certified.

**B.    The proposed Settlement is fundamentally fair, adequate, and reasonable.**

**1.    The Settlement Agreement is the result of non-collusive arm's length negotiations.**

In determining whether a settlement warrants preliminary approval, a court "first considers 'the means by which the parties arrived at settlement.'" *All Consumer & Reseller Actions (In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.),* 2016 U.S.

15

Dist. LEXIS 99071, at *639 (N.D. Cal. July 26, 2016). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

Here, the Parties were represented by knowledgeable, competent counsel with significant experience with complex litigation and class actions. Franzini Decl. ¶¶4-7. Counsel were well-informed in all negotiations and attended mediation only after significant analysis of the case and exchange of crucial and sensitive information. *Id.* ¶10; *see Perks v. ActiveHours, Inc.,* 2021 U.S. Dist. LEXIS 57272, at *13 (N.D. Cal. Mar. 25, 2021) ("Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case"). And, counsel enlisted the services of an experienced mediator to guide settlement discussions. Settlement Agreement §1.4; Franzini Decl. ¶9; *Satchell v. Fed. Express Corp.,* 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). So, in short, the Settlement Agreement was the result of non-collusive and contentious negotiations, and should be approved. *See Rodriguez v. W. Publishing,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Ninth Circuit has identified "red flags" that may suggest potential collusion. *Briseño v. Henderson,* 998 F.3d 1014, 1018 (9th Cir. 2021). These "'subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations'" include "(1) 'when counsel receive a disproportionate distribution of the settlement'; (2) 'when the parties negotiate a 'clear sailing' arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015). None of these are present here. As discussed above, Plaintiff's counsel will ask for a 25% fee award—exactly the benchmark set by this Circuit, and less than is commonly granted in similar cases. *In re Online DVD-Rental*

16

*Antitrust Litig.*, 779 F.3d 934, 949(establishing a 25% benchmark for fees in common fund cases); *Craft v. Cnty. Of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in fees above 25%."). The Parties did *not* negotiate a clear sailing provision, and GoBrands is free to contest Plaintiff's request. Settlement Agreement §8.1. And, the Settlement calls for a non-reversionary common fund—under no circumstances will funds revert back to GoBrands. *Id.* §8.2. The absence of any signs of potential collusion also supports preliminary approval.

### 2. The Settlement provides excellent relief to Class Members, especially given the significant risks of continued litigation.

The Settlement provides substantial and immediate benefits for Settlement Class Members, through monetary payments and non-monetary programmatic relief. Settlement Agreement §2.7. All Settlement Class Members will receive either a cash-equivalent Gopuff credit to be used on any products sold through Gopuff, or, at their election, a cash payment. *Id.* §§2.8-2.10. The Parties anticipate that these payments will be equal to the amount that each Settlement Class Member paid for their first month of Fam, and provide consumers with either $5.95 or $7.99 in direct benefits depending on their initial subscription cost. *Id.* §5.2. Payments will come from the $400,000 Settlement Fund. *Id.* §2.46. After accounting for notice and administration costs (estimated to be $45,300), attorneys' fees and costs (expected to be $100,000 and $9,000 respectively), and a service award for Mr. Beer (expected to be $1,500), the Parties anticipate that $244,200 will be used exclusively to provide benefits to the Settlement Class—a significant benefit to Class Members.[3] Franzini Decl. ¶17. Similar class action settlements have been approved by courts in this Circuit. *See e.g.*, *Kissel v. Code 42 Software, Inc.*, 2017 U.S. Dist. LEXIS 223526, at *34 (C.D. Cal. Oct. 4, 2017) (granting preliminary approval of a $400k common fund settlement in an automatic renewal class action where class members would receive between $7.00 and $7.50).

---

[3] As discussed above, the Settlement also provides significant non-monetary relief. Settlement Agreement §5.1; *see* §II(C)(2).

17

This outcome is particularly excellent given the significant risks and challenges presented by continued litigation. While Plaintiff's counsel is confident in the strength of the case, GoBrands has raised several significant arguments regarding both arbitration and liability.

In the lead up to mediation, GoBrands argued forcefully that the Fam sign up page includes a binding reference to Terms & Conditions that contain an arbitration agreement and class action waiver. Franzini Decl. ¶21. Thus, GoBrands asserted that it could successfully move to compel arbitration of Mr. Beer's claims, and that he could not pursue class relief in arbitration. Settlement Agreement §1.7 (explaining that Defendant retains the right to enforce its arbitration agreement if the Settlement fails); *see Samson v. Nama Holdings, LLC*, 2009 U.S. Dist. LEXIS 130663, at *19 (C.D. Cal. May 20, 2009) (noting that the Federal Arbitration Act "calls on courts to 'rigorously enforce agreements to arbitrate.'"). In other words, barring this Settlement, the class claims may have failed at the gate, and, in that case, Settlement Class Members would receive no relief whatsoever. *See Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, 2021 U.S. Dist. LEXIS 87268, at *16 (N.D. Cal. May 5, 2021) (finding a settlement adequate in light of the risk presented by a class action waiver "which would likely reduce the overall recovery since 'typically only a fraction of individuals pursue arbitration.'").

GoBrands also contested its liability to Mr. Beer and Settlement Class Members. Among other arguments, GoBrands argued that (1) the Fam disclosures did not violate the ARL; (2) the Fam subscription was not the type of "good" or "service" covered by the CLRA; (3) Mr. Beer lacks Article III standing to pursue injunctive relief; and (4) Mr. Beer lacks statutory standing under California's consumer protection statutes. Franzini Decl. ¶21. Thus, to succeed on his own claims, Mr. Beer would have to beat a number of substantive arguments from GoBrands, successfully certify a class despite GoBrands' likely objections, and win at trial. *Id.* (explaining that GoBrands also contested Mr. Beer's ability to certify a class); Settlement Agreement §3.2 ("Defendant has reserved all rights to challenge certification of any class or subclass for trial or other litigation purposes").

And even then, there is the possibility of appeal. *See Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538, at \*12 (N.D. Cal. July 11, 2014) ("[S]ettlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal.").

Even in the best case scenario for Mr. Beer and the Settlement Class, litigating this case—now at an early stage—to completion could take years and significant additional expense. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)); *Neary v. Regents of University of California*, 3 Cal. 4th 273, 277 (1992) (explaining that "[s]ettlement is perhaps most efficient the earlier the settlement comes in the litigation continuum.").

In short, the Parties have negotiated a beneficial and reasonable Settlement, and the "high risk, expense, and complex nature of the case weigh in favor of approving" it. *Larsen*, 2014 U.S. Dist. LEXIS 95538 at \*13.

> **3.** **The Settlement provides a substantial benefit to the Settlement Class and is reasonable given Defendant's maximum potential liability.**

When evaluating whether a Settlement falls within the realm of reasonableness "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007). It is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery." *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Here, the proposed Settlement provides excellent relief, and is well within the range of reasonable outcomes.

As discussed above, the Parties anticipate that payments from the Settlement will be approximately equal to the subscription fee that Settlement Class Members were charged for the first paid month of their Fam subscription. Settlement Agreement §5.2;

Franzini Decl. ¶15. Thus, the Parties expect that Settlement Class Members will receive a payment of approximately $5.95 or $7.99 depending on when they signed up for a Fam free trial. Settlement Agreement §5.2. Payments will be the same amount regardless of whether a Settlement Class Member receives payment in cash or credit.

Assuming that GoBrands' maximum liability is calculated as all subscription fees charged to Settlement Class Members, its estimated liability is around $829,573. Franzini Decl. ¶20. Here, the Settlement Agreement calls for a $400,000 fund—which provides almost half (48%) of GoBrands' total liability to Settlement Class Members. Indeed, even looking just at the portion of the Settlement Fund dedicated exclusively to providing payments to Settlement Class Members—$244,200—the Settlement represents almost 30% recovery of the maximum available damages. This is an excellent outcome for the Settlement Class, especially in light of the substantial risks discussed above, and falls easily within the range of accepted settlements. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 607 (N.D. Cal. 2015) (approving settlement representing 9% of all renewal fees); *Kissel,* 2017 U.S. Dist. LEXIS 223526, at *23 (approving settlement recovery of 3.7% "of all renewal fees paid by all class members during the class period"); *Custom LED, LLC v. eBay, Inc.*, 2013 U.S. Dist. LEXIS 165881, at *9 (N.D. Cal. Nov. 20, 2013) (approving settlement recovery of 1.8% or 16% for claims related to online fees, depending on when consumers bought).[4]

---

[4] In other ARL settlements, parties have argued that maximum potential liability could be limited to the total subscription fees paid by consumers for their *first* paid renewal period because parties should be on notice of the renewing charges after the first charge. *Kissel,* 2017 U.S. Dist. LEXIS 223526, at *23 (recognizing several possible calculations of maximum possible liability, including all subscription fees paid by consumers and the "renewal fees paid by all class members for the first renewal period."). This theory—which Plaintiff contests—would lead to a total maximum liability of approximately $235,155. Franzini Decl. ¶20. In other words, based on one theory of recovery considered in ARL cases, this Settlement represents a recovery *above* the maximum damages the Class could recover in litigation. *Cf. Kissel,* 2017 U.S. Dist. LEXIS 223526, at *23 (preliminarily approving an ARL settlement fund that was approximately

The relief provided by the Settlement is especially meaningful in that it automatically provides cash-equivalent credits to be used on any product sold on Gopuff. The credits do not expire, and any minimum delivery fee will be waived on orders submitted with a Settlement Credit. Settlement Agreement §2.8. Plus, because Gopuff is a grocery service, the credits allow consumers to select from a diverse array of commonly purchased and useful food and consumer items. *Id.* §2.8; *see Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 952 (9th Cir. 2015) (Walmart gift cards provided real value to consumers because they offered "them a set amount of money to use on their choice of a large number of products from a large retailer."). Alternatively, at consumers' election, they can choose a cash payment rather than a Gopuff Credit. In other words, the Agreement does not require Settlement Class Members to do business with GoBrands again if they elect not to. For these reasons, the Settlement is distinct from disfavored coupon settlements. *See Williamson v. McAfee, Inc.*, 2017 U.S. Dist. LEXIS 15838, at *4 (N.D. Cal. Feb. 3, 2017) (settlement was "not a coupon settlement," because "class members had the option to receive cash instead of value certificates, even though they received certificates by default.").

### 4.    Experienced counsel have determined that the Settlement is fair and adequate.

"[R]epresentation by competent counsel familiar with the law in the relevant area and with 'the strengths and weaknesses of [the parties'] respective positions, suggests the reasonableness of the settlement.'" *Navarrete v. Sprint United Mgmt. Co.*, 2021 U.S. Dist. LEXIS 40398, at *30 (C.D. Cal. Mar. 2, 2021). In other words, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979*); see Taylor v. Populus Grp., LLC*, 2022 U.S. Dist. LEXIS 137518, at *19 (S.D. Cal. Aug. 1, 2022) (courts "give 'great weight' to [counsel's] recommendations" because "the parties' counsel are the ones most familiar

---

10.3% of the potential maximum liability of "all renewal fees paid by all class members during the class period.").

with the facts of the litigation.").

Here, proposed Class Counsel has significant experience in complex litigation, including in consumer class actions. Franzini Decl. ¶¶4-7; *see Maxin v. RHG & Co.*, 2018 U.S. Dist. LEXIS 26795, at *12 (S.D. Cal. Feb. 16, 2018) ("[I]n the present case the presumption of reasonableness is warranted based on Class Counsel's expertise in litigating CLRA, UCL, and FAL claims."). Plus, proposed Class Counsel has dedicated substantial time to this litigation, including a thorough legal and factual investigation. Franzini Decl. ¶10. As a result, Counsel is highly qualified and well-informed.

Proposed Class Counsel recommends the Settlement Agreement, and believes that it represents an exceptional outcome for the Class. *Id.* ¶20. This recommendation suggests that that the Agreement is reasonable.

### 5. The Settlement Fund will be fairly distributed amongst Settlement Class Members.

In determining whether to grant preliminary approval, courts consider "whether the proposal 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Perks v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *18 (N.D. Cal. Mar. 25, 2021); *see* Fed. R. Civ. P. 23(e)(2)(D). Here, as explained below, the Settlement does not improperly prioritize Mr. Beer, and it provides equitable relief to Settlement Class Members.

First, as the Ninth Circuit has explained, service awards are justified "to compensate class representatives for work undertaken on behalf of a class," and are "fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Here, Plaintiff's counsel will seek only a reasonable and proportionate service award—$1,500—on behalf of Mr. Beer. Settlement Agreement §8.3. Given Mr. Beer's diligence and commitment to the case, discussed above, a $1,500 service award—which represents less than 1% of the Settlement Fund—is justified. *Ahmed v. HSBC Bank USA*, 2019 U.S. Dist. LEXIS 104401, at *35 (C.D. Cal. June 21, 2019) (Olguin, J.) (a service award "amounting to less than one percent of the settlement

22

fund" was "warranted given the substantial efforts plaintiffs [had] undertaken on behalf of the class."). Indeed, courts routinely allow higher service awards. *See, e.g.*, *Ahmed*, 2019 U.S. Dist. LEXIS 104401 at *34 (Olguin, J.) (explaining that a $5,000 service award is "presumptively reasonable."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000."); *Wahl v. Yahoo! Inc.*, 2018 U.S. Dist. LEXIS 195287, *19-20 (N.D. Cal. 2018) (awarding a $5,000 service award in an ARL case). Plus, the Settlement is not contingent on the Court approving a $1,500 award, and so, there is no risk of a conflict of interest with absent Class Members. Settlement Agreement §8.3; *see Ahmed*, 2019 U.S. Dist. LEXIS 104401 at *34 ("Moreover, because the Parties agree that the Settlement Agreement shall remain in force regardless of any incentive award, the awards here are unlikely to create a conflict of interest between the named plaintiffs and absent class members").

In addition, the Settlement does not grant preferential treatment to any one segment of the Settlement Class. Settlement Class Members will receive different payments depending on when they first signed up for Fam—but, this distinction makes sense as Class Members who signed up later in the class period paid a higher subscription fee ($7.99) than Class Members who signed up earlier ($5.95). Settlement Agreement §5.2. This manner of distributing Settlement benefits is based on Class Members' potential damages and is an equitable means of allocating the Settlement Fund. *See Perks v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *18 (N.D. Cal. Mar. 25, 2021) ("This pro rata distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages.").

In short, the Settlement treats all Class Members fairly and warrants preliminary approval for this reason.

### C.    The Court should approve the proposed notice plan.

Under Rule 23(e)(1) "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Here, the Parties proposed notice plan is the "best notice that is practicable under the circumstances" and

23

should be approved by the Court. Fed. R. Civ. P. 23(c)(2)(B); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

The Parties have devised a multi-step notice plan designed to provide all necessary information to Class Members to enable them to make a well-informed decision about their participation in the Settlement. First, Defendant will provide a Class List identifying Class Members, as well as their emails and relevant addresses, to the Settlement Administrator. Settlement Agreement §9.2. Then, as discussed above, all Settlement Class Members will receive direct notice by email or by mail, if email notice fails. *Id.*; Weisbrot Decl. ¶¶13, 18. The notices are drafted in plain English and provide all relevant information about the case, the Settlement, and Settlement Class Members' rights. Settlement Agreement, Exhibit B. In particular, the notices provide information about the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, all relevant deadlines, and a statement about the release of claims. *Id.* The notices also inform Class Members about their ability to file a claim for a cash payment and their right to opt-out or object to the Settlement. *Id.*

In addition to providing Class Members with notice, the Settlement Administrator will establish a Settlement Website, where Class Members can review relevant Court documents, and important dates and deadlines pertinent to the Settlement. Settlement Agreement §2.48; Weisbrot Decl. ¶20. The Settlement Website will also include an "FAQ" to answer common Class questions about the Settlement. Weisbrot Decl. ¶20.

In light of these comprehensive steps, the Court should approve the notice plan and appoint Angeion Group as the Settlement Administrator. Angeion has significant experience administering class action settlements and anticipates that the proposed plan will provide the best notice practicable. *Id.* ¶¶3, 9, 10, 33.

## IV. Conclusion.

For the foregoing reasons, the Motion should be granted.

Dated: July 19, 2023

Respectfully submitted,

By: /s/ *Simon Franzini*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

By: /s/ *Courtney Baird*

Courtney L. Baird (SBN 234410)
DUANE MORRIS LLP
E-mail: clbaird@duanemorris.com
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
Telephone: 619 744 2285
Facsimile: 619 923 3115

Ayad Mathews (SBN 339785)
DUANE MORRIS LLP
E-mail: amathews@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile: 619 744 2201

*Attorneys for Defendant*