**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN BEER, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>      v.<br><br>GOBRANDS, INC.,<br><br>                    Defendant. | Case No. CV 22-7386 FMO (RAOx)<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to the Joint Motion for Class Certification and Preliminary Approval of Class Action Settlement (Dkt. 31, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**

On October 11, 2022, plaintiff filed this putative class action against defendant GoBrands, Inc. ("defendant" or "GoBrands"), asserting claims for violation of California's: (1) Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, et seq.; (2) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and (3) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.

Plaintiff alleges that defendant, an online grocery shopping and delivery service, violated the ARL, which requires companies that sign consumers up for automatic renewing purchases to provide "clear and conspicuous" disclosures about the auto renewal plan and to obtain "affirmative

consent" for consumers to enroll in an automatic renewal plan.  (See Dkt. 1, Complaint at ¶¶ 2-4). According to plaintiff, defendant offers a subscription service, the GoPuff Fam Subscription Program ("Fam"), where consumers pay a monthly charge of $5.95 for grocery delivery.  (Id. at ¶¶ 3, 17).  Fam automatically renews on a monthly basis.  (Id.).  To enroll consumers, defendant offers a free 14-day free trial offer, and at the end of the trial period, they are automatically enrolled in a monthly subscription plan.  (Id. at ¶¶ 4, 18).  However, plaintiff alleges that defendant does not provide clear and conspicuous disclosures or obtain affirmative consent before enrolling consumers in the auto-renewal plan.  (Id.); (see also id. at ¶¶ 19-33) (describing free-trial enrollment process).

On December 5, 2022, the court granted the parties' stipulation to stay the action "pending completion of mediation."  (See Dkt. 16, Court's Order of December 5, 2022, at 2).  The court subsequently granted three additional stipulations to stay for the parties to pursue their settlement discussions.  (See Dkt. 21, Court's Order of March 29, 2023); (Dkt. 23, Court's Order of April 17, 2023); (Dkt. 25, Court's Order of May 9, 2023).  On May 26, 2023, the parties filed a status report indicating that they had "reached an agreement[.]"  (See Dkt. 26, Fifth Joint Status Report at 4).

The parties have defined the settlement class as "all California residents who signed up for a GoPuff 'Fam' free trial and who thereafter were enrolled in the Fam program and charged at least one monthly subscription fee following the end of the free trial, during the Class Period." (Dkt. 31-1, Class Action Settlement Agreement ("Settlement Agreement") at ¶ 2.43).  The Class Period is defined as the period "commencing July 23, 2021 and ending on February 6, 2023[.]" (Id. at ¶ 2.16).

Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $400,000, (see Dkt. 31-1, Settlement Agreement at ¶ 2.46), which will be used to provide payments to class members, administration costs, attorney's fees and costs, and a service award to plaintiff.  (See id.).  The Settlement Agreement provides for up to $100,000 in attorney's fees (25% of the gross settlement fund), (id. at ¶ 8.1); costs not to exceed $9,000, (see id.); (Dkt. 31, Memorandum of Points and Authorities ("Memo.") at 7); and a service award of $1,500 for Beers. (Dkt. 31-1, Settlement Agreement at ¶ 8.3).  The proposed settlement administrator, Angeion

Group ("Angeion"), (id. at ¶ 6.1), will be paid no more than $50,000. (See Dkt. 31, Memo. at 8); (Dkt. 31-8, Declaration of Steven Weisbrot of Angeion Group, LLC Re: Proposed Notice Plan ("Weisbrot Decl.") at ¶ 32) (Angeion estimates the amount to be $45,300 and "has agreed to a capped amount of $50,000").

The payments to class members will consist of either a Credit Benefit or a Cash Benefit. (See Dkt. 31-1, Settlement Agreement at ¶ 2.46). Credit Benefit(s) are "automatic account credits issued by GoPuff to each Settlement Class Member unless the Settlement Class Member files a Cash Benefit Claim[.]" (Id. at ¶ 2.8). This benefit, which will not expire, will "be applied towards a purchase made through GoPuff." (Id.). Cash Benefit(s) "are the form of cash payment issued for a valid Cash Benefit Claim[1] as determined by the Settlement Administrator and in accordance with [the Settlement] Agreement." (Id. at ¶ 2.9) (footnote added). Each class member will receive a payment (either in the form of a credit or cash) "equal to the subscription fee they were charged for the first paid month of their GoPuff Fam subscription." (Id. at ¶ 5.2). The payment amount will "equal $5.95 or $7.99, depending on when a Settlement Class Member signed up."[2] (Id.). If, after payment of administrative costs, attorney's fees and costs, and the service award to plaintiff, there are insufficient funds to make payments to class members in accordance with their initial subscription, the payments will be reduced pro rata. (See id.). However, the parties find this outcome "unlikely" given the class size, the percentage who paid the lower $5.95 subscription fee, and the expected net settlement fund.[3] (See Dkt. 31, Memo. at 4-5).

In addition to monetary relief, the settlement provides for programmatic relief. According to the parties, after this action was filed, defendant re-designed its Fam disclosures to ensure that

---

[1] The Cash Benefit(s) Claim "means a request for a cash payment in lieu of a Credit Benefit[.]" (Dkt. 31-1, Settlement Agreement at ¶ 2.10); (see also id. at ¶ 2.11); (Dkt. 31-2, Exh. A, Claim Form).

[2] The monthly fee for the majority of consumers was $5.95, but increased to $7.99 in October 2022. (Dkt. 31, Memo. at 2).

[3] The size of the settlement "assumes that the Settlement Class has 40,000 or fewer members." (Dkt. 31-1, Settlement Agreement at ¶ 2.46). If confirmatory discovery disclosed more than 40,000 class members, "the Settlement Fund will increase proportionally to account for the larger class." (Id.).

consumers have the requisite ARL notice.  (See Dkt. 31-1, Settlement Agreement at ¶ 5.1).  The Settlement Agreement further permits class counsel to enforce compliance with the ARL.  (See id.).

In the pending Motion, plaintiff seeks an order:  (1) preliminarily certifying the proposed settlement class; (2) appointing Beer as class representative for settlement purposes; (3) appointing Dovel & Luner LLP as class counsel; (4) preliminarily approving the proposed settlement; (5) approving the notice plan; and (6) appointing Angeion as settlement administrator.  (See Dkt. 31, Motion at 1); (id., Memo. at 8).

## **LEGAL STANDARDS**

I.      CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23 . . . or render a final decision as to the appropriateness of class certification."[4]  Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (citation and footnote omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997) ("Amchem")) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").   In the settlement context, a court must pay "undiluted, even heightened, attention" to the class certification requirements.  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248; In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597, 606 (9th Cir. 2018) (same).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

---

[4] All "Rule" references are to the Federal Rules of Civil Procedure.

1  of the class; and (4) the representative parties will fairly and adequately protect the interests of the

2  class."  Fed. R. Civ. P. 23(a).  Courts refer to these requirements by the following shorthand:

3  "numerosity, commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda

4  Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by Olean

5  Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc)

6  ("Olean Wholesale").  In addition to fulfilling the four prongs of Rule 23(a), the proposed class must

7  meet at least one of the three requirements listed in Rule 23(b).[5]  See Wal-Mart Stores, Inc. v.

8  Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011) ("Dukes").

9       "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that

10  the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied.

11  Olean Wholesale, 31 F.4th at 664 (internal quotation marks omitted).  A plaintiff "must prove the

---

12

13       [5]  Rule 23(b) is satisfied if:

14       (1) prosecuting separate actions by or against individual class members would
15       create a risk of:
16            (A) inconsistent or varying adjudications with respect to individual class
             members that would establish incompatible standards of conduct for the
             party opposing the class; or
17            (B) adjudications with respect to individual class members that, as a practical
18            matter, would be dispositive of the interests of the other members not parties
             to the individual adjudications or would substantially impair or impede their
19            ability to protect their interests;
20       (2) the party opposing the class has acted or refused to act on grounds that apply
       generally to the class, so that final injunctive relief or corresponding declaratory relief
21       is appropriate respecting the class as a whole; or
22       (3) the court finds that the questions of law or fact common to class members
       predominate over any questions affecting only individual members, and that a class
       action is superior to other available methods for fairly and efficiently adjudicating the
23       controversy.  The matters pertinent to these findings include:
            (A) the class members' interests in individually controlling the prosecution or
24            defense of separate actions;
25            (B) the extent and nature of any litigation concerning the controversy already
             begun by or against class members;
26            (C) the desirability or undesirability of concentrating the litigation of the claims
             in the particular forum; and
27            (D) the likely difficulties in managing a class action.

28  Fed. R. Civ. P. 23(b)(1)-(3).

facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." Id. at 665. However, Rule 23(b)(3) issues regarding manageability are "not a concern in certifying a settlement class where, by definition, there will be no trial." In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc) ("In re Hyundai").

II.     FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Just. v. Civ. Serv. Comm'n of the City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (internal quotation marks omitted).

Approval of a class action settlement requires a two-step process – preliminary approval and the dissemination of notice to the class, followed by a later final approval. See Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016). Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money, and resources involved in, for example, sending out . . . class notice[] – should be good enough for final approval." Spann, 314 F.R.D. at 319; see also 4 Newberg on Class Actions § 13:10 (6th ed. 2023) ("[S]ending notice to the class costs money and triggers the need for class members to consider the settlement, actions which are wasteful if the proposed settlement [is] obviously deficient from the outset."). The court may grant preliminary approval and direct notice in a reasonable manner to all class members who would be bound by the settlement if the parties provide sufficient information to show that the court will likely be able to: (1) "approve the proposal under Rule 23(e)(2)"; and (2) "certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B); see Macy v. GC Servs. Ltd. P'ship, 2019 WL 6684522, *1 (W.D. Ky. 2019)

("The standard for preliminary approval was codified in 2018, with Rule 23 now providing for notice to the class upon the parties' showing that the court will likely be able to approve the proposed settlement under the final-approval standard contained in Rule 23(e)(2)."); 4 <u>Newberg on Class Actions</u> § 13:10 (6th ed. 2023) ("In 2018, Congress codified this approach into Rule 23.  Rule 23(e)(1)(B) now sets forth the grounds for the initial decision to send notice of a proposed settlement to the class[.]").

"At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." <u>Spann</u>, 314 F.R.D. at 319 (internal quotation marks omitted); <u>see</u> <u>Bronson v. Samsung Elecs. Am., Inc.</u>, 2019 WL 5684526, *7 (N.D. Cal. 2019) (same); <u>see</u> <u>also</u> 2018 Adv. Comm. Notes to Amendments to Rule 23(e)(1) (The types of information that should be provided to the court in deciding whether to send notice – <u>i.e.</u>, that it will likely approve the settlement under Rule 23(e)(2) and certify the class for purposes of settlement – "depend on the specifics of the particular class action and proposed settlement."  "[G]eneral observations" as to the types of information that should be provided include, but are not limited to, the following:  (1) "the extent and type of benefits that the settlement will confer on the members of the class" and if "funds are . . . left unclaimed, the settlement agreement ordinarily should address the distribution of those funds"; (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation"; (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions"; (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal"; (5) "the proposed handling of an award of attorney's fees under Rule 23(h)"; (6) "any agreement that must be identified under Rule 23(e)(3)"; and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate.").

/ / /

**DISCUSSION**

I.     CLASS CERTIFICATION.

    A.     Rule 23(a) Requirements.

        1.     **Numerosity**.

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "Although the size of the class is not the sole determining factor, . . . where a class is large in numbers, joinder will usually be impracticable." A.B. v. Hawaii State Dep't of Educ., 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation marks omitted). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members[.]" Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473-74 (C.D. Cal. 2012) (same).

Here, the class is so numerous that joinder is impracticable. The settlement class includes approximately 36,633 members, (see Dkt. 31, Memo. at 10), which easily exceeds the minimum threshold for numerosity.

        2.     **Commonality**.

The commonality requirement is satisfied if "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds as recognized by Castillo v. Bank of Am., NA, 980 F.3d 723 (9th Cir. 2020); Mazza, 666 F.3d at 589. Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza, 666 F.3d at

588 (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact."  Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact").  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Hanlon, 150 F.3d at 1019.

This case involves common class-wide questions that are apt to drive the resolution of the litigation.  Here, common questions include whether Fam:  (1) failed to provide clear and conspicuous notice that the Fam free trial automatically renewed; (2) charged class members for an automatically renewing subscription without affirmative consent; and (3) specified its automatic renewal terms as required by California Business & Professions Code § 17601.  (See Dkt. 31, Memo. at 11).  Under the circumstances, the court finds that plaintiff has satisfied the commonality requirement.  See, e.g., Kissel v. Code 42 Software, Inc., 2017 WL 10560526, *4 (C.D. Cal. 2017) (finding commonality requirement met in ARL class action based on similar common questions).

### 3.  **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted).  To demonstrate typicality, the class representative's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical."  Hanlon, 150 F.3d at 1020; see Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class.").  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Ellis, 657 F.3d at 984 (internal quotation marks omitted).

1   Here, Beer's claims arise from the same nucleus of facts as those of the class and are
2   based on the same legal theory, i.e., that defendant violated the ARL by converting his and the
3   class members' trial subscriptions to automatically renewing monthly subscriptions without
4   providing sufficient notice or obtaining affirmative consent. (See Dkt. 31, Memo. at 11-12); Brown
5   v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal. 2012) (typicality requirement satisfied where
6   plaintiff's claims were based on "the same event or practice or course of conduct that g[ave] rise
7   to the claims of other class members and . . . are based on the same legal theory") (internal
8   quotation marks omitted).  Additionally, the court is not aware of any facts that would subject the
9   proposed class representative "to unique defenses which threaten to become the focus of the
10  litigation."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation
11  marks omitted).  In short, plaintiff has satisfied the typicality requirement.

12              4.   **Adequacy of Representation**.

13      "The named Plaintiffs must fairly and adequately protect the interests of the class."  Ellis,
14  657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will
15  adequately represent a class, courts must resolve two questions:  (1) do the named plaintiffs and
16  their counsel have any conflicts of interest with other class members and (2) will the named
17  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal
18  quotation marks omitted).  "Adequate representation depends on, among other factors, an
19  absence of antagonism between representatives and absentees, and a sharing of interest
20  between representatives and absentees."  Id.

21      Here, the proposed class representative has no individual claims separate from the class
22  claims, (see, generally, Dkt. 1, Complaint), and does not appear to have any conflicts of interest
23  with the absent class members.  (See Dkt. 31, Memo. at 12); see, e.g., Barbosa v. Cargill Meat
24  Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013) ("[T]here is no apparent conflict of interest
25  between the named Plaintiffs' claims and those of the other Class Members' – particularly because
26  the named Plaintiffs have no separate and individual claims apart from the Class.").  Thus, "[t]he
27  adequacy-of-representation requirement is met here because Plaintiff[] ha[s] the same interests
28  as the absent Class Members[.]" See Barbosa, 297 F.R.D. at 442.

1    Finally, as noted earlier, adequacy "also factors in competency and conflicts of class

2    counsel." Amchem, 521 U.S. at 626 n. 20, 117 S.Ct. at 2251.  Here, the Settlement Agreement

3    provides for the court to appoint Dovel & Luner LLP as class counsel. (See Dkt. 31-1, Settlement

4    Agreement at ¶ 2.14).  Having reviewed the declaration and firm resume filed by proposed class

5    counsel, (see Dkt. 31-6, Declaration of Simon Franzini in Support of the Parties' Joint Motion for

6    Class Certification and Preliminary Approval of Class Action Settlement ("Franzini Decl.") at ¶¶ 4-

7    7); (id., Exh. A, Firm Resume), the court finds that counsel are competent, and there are no issues

8    as to the adequacy of representation.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge

9    to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by

10   experienced and competent counsel who have litigated numerous class action cases.").

11        B.    Rule 23(b) Requirements.

12        Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

13   be served best by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (internal

14   quotation marks omitted).  The rule requires two different inquiries, specifically a determination as

15   to whether:   (1) "questions of law or fact common to class members predominate over any

16   questions affecting only individual members[;]" and (2) "a class action is superior to other available

17   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see

18   Spann, 314 F.R.D. at 321-22.

19        1.    **Predominance**.

20        "[T]he general rule [is] that predominance is easier to satisfy in the settlement context."

21   Jabbari v. Farmer, 965 F.3d 1001, 1006 (9th Cir. 2020).  "To determine whether a class satisfies

22   the [predominance] requirement, a court pragmatically compares the quality and import of

23   common questions to that of individual questions."  Id. at 1005.  "[T]he predominance analysis

24   under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the

25   case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by

26   representation."  Abdullah, 731 F.3d at 964 (internal quotation marks omitted); see also Amchem,

27   521 U.S. at 623, 117 S.Ct. at 2249 ("The Rule 23(b)(3) predominance inquiry tests whether

28   proposed classes are sufficiently cohesive to warrant adjudication by representation.").  "If a

1  common question will drive the resolution [of the litigation], even if there are important questions

2  affecting only individual members, then the class is sufficiently cohesive to warrant adjudication

3  by representation." Jabbari, 965 F.3d at 1005 (internal quotation marks omitted); see Abdullah,

4  731 F.3d at 964 ("Rule 23(b)(3) requires [only] a showing that questions common to the class

5  predominate, not that those questions will be answered, on the merits, in favor of the class.")

6  (internal quotation marks omitted) (brackets in original).  Finally, the class damages must be

7  sufficiently traceable to plaintiff's liability case.  See Comcast Corp. v. Behrend, 569 U.S. 27, 35,

8  133 S.Ct. 1426, 1433 (2013).

9        For the reasons discussed above, see supra at § I.A.2., the court is persuaded that

10  common questions predominate over individual questions. See Tyson Foods, Inc. v. Bouaphakeo,

11  577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the

12  action are common to the class and can be said to predominate, the action may be considered

13  proper under Rule 23(b)(3) even though other important matters will have to be tried separately,

14  such as damages or some affirmative defenses peculiar to some individual class members.")

15  (internal quotation marks omitted).  For example, there is an overriding common question as to

16  whether defendant failed to comply with the procedures mandated by the ARL.  See, e.g., Kissel,

17  2017 WL 10560526, at *5 ("[C]lass members' claims turn on the common practices of [defendant]

18  in failing to comply with the Automatic Renewal Law.  This common question and the common

19  legal remedies will predominate in this action."); Wahl v. Yahoo! Inc., 2018 WL 6002323, *3 (N.D.

20  Cal. 2018) ("The common question in this case – whether Yahoo violated the ARL by automatically

21  renewing subscriptions . . . without statutorily required notice – predominates.").  Finally, the relief

22  sought applies to all class members and is traceable to plaintiff's liability case.  See Comcast, 569

23  U.S. at 35, 133 S.Ct. at 1433.  In short, the court is persuaded that "[a] common nucleus of facts

24  and potential legal remedies dominates this litigation."  Hanlon, 150 F.3d at 1022.

25  / / /

26

27

28

2.    **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023 (internal citation omitted).  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation." Barbosa, 297 F.R.D. at 444.  Here, Beer does not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  (See, generally, Dkt. 1, Complaint).  The alternative method of resolution – pursuing individual claims for a relatively modest amount of damages – would likely never be brought, as "litigation costs would dwarf potential recovery." Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus. Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action.").  In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]"  Fed. R. Civ. P. 23(b)(3)(B).  While any class member who wishes to control his or her own case may opt out of the class, see Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling

their own litigation."  4 <u>Newberg on Class Actions</u> § 4:70 (6th ed. 2023) (emphasis omitted).  Here, there is no indication that any class member is involved in any other litigation concerning the claims in this case.  (<u>See</u>, <u>generally</u>, Dkt. 31, Memo. at 15); <u>see</u> <u>Barbosa</u>, 297 F.R.D. at 444 ("The Court does not have any information that litigation concerning this controversy is currently being pursued by or against the class members; thus, this factor is neutral.").

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[,]" and the fourth factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant."  <u>Barbosa</u>, 297 F.R.D. at 444;  <u>see</u> <u>also</u> <u>Amchem</u>, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (citation omitted); <u>In re Hyundai</u>, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and settlement classes.  In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial.  However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The only factors in play here weigh in favor of class treatment.  Further, the filing of separate suits by potentially thousands of other class members "would create an unnecessary burden on judicial resources."  <u>Barbosa</u>, 297 F.R.D. at 445.  Under the circumstances, the court finds that the superiority requirement is satisfied.

II.     FAIRNESS,    REASONABLENESS,    AND    ADEQUACY    OF    THE    PROPOSED
        SETTLEMENT.

A.      <u>The Settlement is the Product of Arm's-Length Negotiations</u>.

Pursuant to Rule 23(e)(2)(B), the court must evaluate whether the settlement was negotiated at arm's length.  Here, class counsel represents that "[s]ettlement negotiations were arduous, contentious, and well-informed.  (<u>See</u> Dkt. 31-6, Franzini Decl. at ¶ 9).  In connection with the parties' settlement efforts, defendant provided subscription and sales data that allowed class counsel to determine the size of the class and potential damages.  (<u>See</u> <u>id.</u> at ¶ 10). Moreover,

the parties reached agreement with the help of an experienced mediator, Bruce Friedman of JAMS.  (Id. at ¶¶ 9-11).

Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing party's positions.  The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties.  See, e.g., Spann, 314 F.R.D. at 323-25 (finding no evidence that a class action settlement was the product of fraud or collusion between the parties); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (affirming final approval of class action settlement where there was "no evidence of fraud, overreaching, or collusion").

      B.    <u>The Amount Offered in Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members</u>.

        1.    **Recovery for Class Members.**

As noted above, class members will share in a non-reversionary gross settlement amount of $400,000.  (See Dkt. 31-1, Settlement Agreement at ¶ 2.46).  Class members may elect to receive a credit to be used on any products sold through GoPuff, or a cash payment.[6]  (Id. at ¶¶ 2.8-2.10, 2.46).  The parties expect the net settlement amount to be approximately $244,200, and that payments to class members will be equal to the subscription fee each class member paid for their first month of Fam – either $5.95 or $7.99.  (See Dkt. 31, Memo. at 17); (Dkt. 31-1, Settlement Agreement at ¶ 5.2).  According to class counsel, class members paid approximately $829,573 in subscription fees during the relevant period, and $235,155 in subscription fees for the first month after being automatically renewed.  (See Dkt. 31-6, Franzino Decl. at ¶ 20).  Thus, the gross settlement amount represents approximately 48% of defendant's total liability, (see id.), and is more than the total subscription fees paid by class members for their first month after the

---

    [6]  For this reason, the court finds that the settlement is "not a coupon settlement[.]"  See, e.g., Williamson v. McAfee, Inc., 2017 WL 6033070, *1 (N.D. Cal. 2017) ("[T]his is not a coupon settlement[] since class members had the option to receive cash instead of value certificates, even though they received certificates by default.").

automatic renewal.  (Id.).  Also, the expected $244,200 net settlement fund is sufficient to cover the approximate $235,155 in first month subscription fees paid by class members.  (See id.); (Dkt. 31, Memo. at 4, 17, 20).  The parties contend that settlement is "particularly excellent" given the risks of further litigation.  (See Dkt. 31, Memo. at 18).  In particular, Fam's sign-up page included a binding reference to Terms & Conditions that included an arbitration agreement and class action waiver.  (See Dkt. 31-6, Franzini Decl. at ¶ 21).

Under the circumstances, the court is persuaded that the settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks and the costs, and delay of trial and appeal.  See Fed. R. Civ. P. 23(e)(1)(B)(i) & (e)(2)(C)(i); 2018 Adv. Comm. Notes to Rule 23(e)(1) (The types of information that should be provided to the court deciding whether to grant preliminary approval  includes, among other things:  (1) "the extent and type of benefits that the settlement will confer on the members of the class"; and (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation").  Here, given the significant risks of litigation coupled with the delays associated with continued litigation, the court is persuaded that the benefits to the class fall within the range of reasonableness.  See, e.g., Kissel, 2017 WL 10560526, at *8 (finding that $400,000 settlement that would result in each class member receiving approximately $7.00 to $7.50 appeared fair and reasonable); In re Uber FCRA Litig., 2017 WL 2806698, *7 (N.D. Cal. 2017) (granting preliminary approval of settlement that was worth "7.5% or less" of the expected value); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

2. **Release of Claims**.

The court must also consider whether the settlement contains an overly broad release of liability.  See 4 Newberg on Class Actions § 13:15 (6th ed. 2023) ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contain[s] obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of

proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis[,]" without the establishment of a settlement fund or any other benefit to the class). Here, class members who do not exclude themselves from the settlement will release

> [a]ny and all claims, rights, demands, charges, causes of action, lawsuits, complaints, obligations, penalties, fines, promises, agreements, controversies and liabilities arising or relating to the automatic renewal of GoPuff subscriptions, which were alleged in the operative complaint, or which arise from the same facts and claims alleged in the operative complaint[.]

(Dkt. 31-1, Settlement Agreement at ¶ 11.2).

With the understanding that, under the Release, settlement class members are not giving up any claims unrelated to those asserted in this action, the court finds that the Release adequately balances fairness to absent class members and recovery for the class with defendants' business interest in ending this litigation with finality. See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks omitted); Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

C. The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representative.

Pursuant to Rule 23(e)(2)(D), the court must evaluate whether the settlement "treats class members equitably relative to each other." The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted," In Re Apple Inc. Device Performance Litig., 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted), and has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of

1    the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir.

2    2013). The court must examine whether there is a "significant disparity between the incentive

3    awards and the payments to the rest of the class members" such that it creates a conflict of

4    interest. See id. at 1165. "In deciding whether [an incentive] award is warranted, relevant factors

5    include the actions the plaintiff has taken to protect the interests of the class, the degree to which

6    the class has benefitted from those actions, and the amount of time and effort the plaintiff

7    expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

8         Here, the Settlement Agreement provides for a service payment of up to $1,500 for plaintiff.

9    (Dkt. 31-1, Settlement Agreement at ¶ 8.3). Under the circumstances here, the court tentatively

10   finds that the requested incentive payment is reasonable .

11         D.   Class Notice and Notification Procedures.

12         Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner

13   to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule

14   23(c)(2) requires the "best notice that is practicable under the circumstances, including individual

15   notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements

16   for classes certified under Rule 23(b)(3)).

17         "The standard for the adequacy of a settlement notice in a class action under either the Due

18   Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v.

19   Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005); Low v. Trump Univ., LLC, 881 F.3d 1111, 1117

20   (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action

21   proceedings is one of reasonableness.") (internal quotation marks omitted). A class action

22   settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient

23   detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

24   Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks

25   omitted); see also Gooch v. Life Inv'rs Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012)

26   (Settlement notices "are sufficient if they inform the class members of the nature of the pending

27   action, the general terms of the settlement, that complete and detailed information is available

28   from the court files, [and] that any class member may appear and be heard at the hearing[.]")

(internal quotation marks omitted).  The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the terms of the settlement but remain in the class.  See In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.") (internal quotation marks omitted).

Here, class members will receive direct notice by email, (see Dkt. 31-1, Settlement Agreement at ¶ 9.2), and mail if the email notice is returned as undeliverable (or an email address is unavailable).  (Id.); (Dkt. 31-8, Weisbrot Decl. at ¶¶ 13, 18).   The Notice of Proposed Class Action Settlement ("Notice") describes the nature of the action and the claims alleged.  (See Dkt. 31-3, Notice at 1, 3); see also Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  It provides the definition of the class, (see Dkt. 31-3, Notice at 1, 4); see also Fed. R. Civ. P. 23(c)(2)(B)(ii), and explains the terms of the settlement, including the settlement amount, the distribution of that amount, and the release, as well as the proposed attorney's fees and expenses, and incentive payment.  (See Dkt. 31-3, Notice at 4-6).  The Notice includes an explanation that lays out the class members' options under the settlement:  they may remain in the class, object to the settlement but still remain in the class, or exclude themselves from the settlement and pursue their claims separately against defendant.  (See id. at 2, 7-8); see also Fed. R. Civ. P. 23(c)(2)(B)(v) & (vi).  Finally, the Notice explains the procedures for objecting to the settlement and provides information about the Final Fairness Hearing.[7]  (See Dkt. 31-3, Notice at 2, 7-9).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.  In addition, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and comply with the requirements of due process.

_____

[7]  The Notice directs class members to a case-specific website, which will include, among other things, a Claim Form for class members to submit to receive a Cash Benefit.  (See Dkt. 31-8, Weisbrot Decl. at ¶ 20); (Dkt. 31-2, Claim Form).

E.      Summary.

The court's preliminary evaluation of the settlement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys." Manual for Complex Litig. § 21.632 at 321 (4th ed. 2004); see also Spann, 314 F.R.D. at 323 (same).

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.    The parties' Joint Motion for Class Certification and Preliminary Approval of Class Action Settlement **(Document No. 31)** is **granted** upon the terms and conditions set forth in this Order.

2.    The court preliminarily certifies the class, as defined in ¶ 2.43 of the Settlement Agreement (Dkt. 31-1), for the purposes of settlement.

3.    The court preliminarily appoints plaintiff Jonathan Beer as class representative for settlement purposes.

4.    The court preliminarily appoints Dovel & Luner LLP as class counsel for settlement purposes.

5.    The court preliminarily finds that the terms of the settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.    The court approves the form, substance, and requirements of the Notice.  (See Dkt. 31-3).  The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.    The court appoints Angeion as settlement administrator.  Angeion shall complete dissemination of class notice, in accordance with the proposed notice plan, no later than **February 5, 2024**.

8. Plaintiff shall file a motion for attorney's fees and costs, as well as any incentive payment, no later than **March 5, 2024,** and notice it for hearing for the date of the final approval hearing set forth below.

9. Any class member who wishes to either (a) object to the settlement, including the requested attorney's fees, costs and incentive award, or (b) exclude him or herself from the settlement, must file his or her objection to the settlement or request exclusion no later than **May 6, 2024**, in accordance with the Notice and this Order.

10. Plaintiff shall, no later than **May 13, 2024**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date of the final approval hearing set forth below.

11. Defendant may file and serve a memorandum in support of final approval of the Settlement Agreement and/or in response to objections no later than **May 20, 2024.**

12. Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs or incentive awards, shall, no later than **May 30, 2024**, file with the court a Notice of Intent to Appear at Fairness Hearing.

13. A final approval (fairness) hearing is hereby set for **June 6, 2024,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement Agreement as well as the award of attorney's fees and costs to class counsel, and incentive award to the named plaintiff.

14. All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 3rd day of January, 2024.


_____
/s/
Fernando M. Olguin
United States District Judge