**DOVEL & LUNER, LLP**
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

**DUANE MORRIS LLP**
Courtney L. Baird (SBN 234410)
E-mail: clbaird@duanemorris.com
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
Telephone: 619 744 2285
Facsimile: 619 923 3115

Ayad Mathews (SBN 339785)
E-mail: amathews@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile: 619 744 2201

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BEER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GOBRANDS, INC.,<br><br>*Defendant*. | Case No. 2:22-cv-7386-FMO-RAO<br><br>**Joint Notice of Motion and Motion for Final Approval of Class Action Settlement**<br><br>Date: June 6, 2024<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 6, 2024, in Courtroom 6D of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Plaintiff Jonathan Beer and Defendant GoBrands, Inc. will and hereby do move this Court for entry of an order of:

1.    Final certification of the Settlement Class for settlement purposes;

2.    Final approval of the class action Settlement as fair, adequate, and reasonable.

This Motion is based on this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Declarations of Simon Franzini and Jazminee Shumway, filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

Dated: May 13, 2024

By: */s/ Simon Franzini*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

By: */s/ Courtney Baird*
Courtney L. Baird (SBN 234410)
E-mail: clbaird@duanemorris.com
**DUANE MORRIS LLP**
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
Telephone: 619 744 2285

Facsimile: 619 923 3115

Ayad Mathews (SBN 339785)
E-mail: amathews@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile: 619 744 2201

*Attorneys for Defendant*

# Table of Contents

I.    Introduction.................................................................................................1

II.   The Settlement. ..........................................................................................2

    A.    The Settlement Class.....................................................................2

    B.    Direct benefits paid to the Settlement Class. ..............................2

    C.    Payment of administration costs, attorneys' fees, and incentive
         awards. ...........................................................................................3

    D.    Programmatic relief.......................................................................4

    E.    Limited release of claims. .............................................................4

III.   Settlement administration and notice. .......................................................5

    A.    The notice provided to Class Members..........................................5

    B.    The optional claims process...........................................................7

    C.    Opt-outs and objections................................................................7

    D.    CAFA notice. ................................................................................8

IV.   The Court should finally approve the Settlement......................................8

    A.    The Court should grant final certification of the Settlement Class...............8

    B.    The notice plan fairly and adequately informed Class Members of
         the Settlement. ..............................................................................8

    C.    The Settlement is fair, reasonable, and adequate............................9

        1.    The Class Representative and Class Counsel adequately
             represented the Class.......................................................10

        2.    The Settlement is the product of arduous, well-informed, and
             non-collusive negotiations at arm's length.........................11

        3.    The Settlement provides excellent relief to the Class, in light
             of the risks of continued litigation, the effectiveness of the
             method of distribution, and the reasonableness of the
             requested attorneys' fees. ...................................................12

            a.    Costs, risks, and delay. ...........................................13

i

b.    Method of distribution. ...........................................................16

c.    Attorneys' fees. .....................................................................17

d.    Additional agreements. ..........................................................18

4.    The Settlement treats Class Members equitably. .............................18

5.    The Class's reaction to the Settlement was overwhelmingly

positive. ......................................................................................20

V.    Conclusion. ...................................................................................................22

Motion for Final Approval                          Case No. 2:22-cv-7386-FMO-RAO

# Table of Authorities

## Cases

*Ahmed v. HSBC Bank USA,*
    2019 U.S. Dist. LEXIS 104401 (C.D. Cal. June 21, 2019) .................................................19

*Barbosa v. Cargill Meat Sols. Corp.,*
    297 F.R.D. 431 (E.D. Cal. 2013) ................................................................................10

*Barr v. SelectBlinds LLC,*
    2024 U.S. Dist. LEXIS 39068 (C.D. Cal. Mar. 4, 2024) ..............................14, 15, 21, 22

*Bravo v. Gale Triangle, Inc.,*
    2017 U.S. Dist. LEXIS 77714 (C.D. Cal. Feb. 16, 2017).............................................15

*Broomfield v. Craft Brew Alliance, Inc.,*
    2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020) ..............................................13

*Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.,*
    249 F.R.D. 334 (N.D. Cal. 2008) ...............................................................................10

*Campbell v. Facebook, Inc.,*
    951 F.3d 1106 (9th Cir. 2020) ......................................................................................9

*Carter v. XPO Logistics, Inc.,*
    2019 U.S. Dist. LEXIS 230601 (N.D. Cal. June 27, 2019)...........................................15

*Chun-Hoon v. McKee Foods Corp.,*
    716 F. Supp. 2d 848 (N.D. Cal. 2010).........................................................................21

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .....................................................9, 11, 12, 14, 20, 21, 22

*Dennis v. Kellogg Co.,*
    2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013) .............................................6

*Edwards v. Nat'l Milk Producers Fed'n,*
    2017 U.S. Dist. LEXIS 1452173 (N.D. Cal. June 26, 2017)............................................6

*Eisen v. Porsche Cars N. Am., Inc.,*
    2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014).................................................11

*Ellis v. Costco Wholesale Corp.*,

   657 F.3d 970 (9th Cir. 2011) ............................................................................... 10

*Grady v. RCM Techs., Inc.*,

   671 F. Supp. 3d 1065 (C.D. Cal. 2023) ............................................................... 18

*Hanlon v. Chrysler Corp.*,

   150 F.3d 1011 (9th Cir. 1998) ....................................................................... 10, 14

*Hartless v. Clorox Co.*,

   273 F.R.D. 630 (S.D. Cal. 2011) ........................................................................... 6

*Hashemi v. Bosley, Inc.*,

   2022 U.S. Dist. LEXIS 210946 (C.D. Cal. Nov. 21, 2022) ................................. 11

*In re Bluetooth Headset Prods. Liab. Litig.*,

   654 F.3d 935 (9th Cir. 2011) ............................................................................... 17

*In re LinkedIn User Priv. Litig.*,

   309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................ 16

*In re Online DVD-Rental Antitrust Litig.*,

   779 F.3d 934 (9th Cir. 2015) ................................................................................. 7

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*,

   2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) .................................... 8

*Judson v. Goldco Direct, LLC*,

   2021 U.S. Dist. LEXIS 258173 (C.D. Cal. June 11, 2021) ................................. 20

*Kaye v. Immunocellular Therapeutics, Ltd.*,

   2019 U.S. Dist. LEXIS 201657 (C.D. Cal. Nov. 19, 2019) ................................. 20

*Klee v. Nissan N. Am., Inc.*,

   2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015) ..................................... 14

*Linney v. Cellular Alaska P'ship*,

   151 F.3d 1234 (9th Cir. 1998) ............................................................................. 11

*Longo v. OSI Sys., Inc.*,

   2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022) ................................. 21

iv

*McKenzie v. Fed. Express Corp.*,

    2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012)....................................15

*McKinney-Drobnis v. Oreshack*,

    16 F.4th 594 (9th Cir. 2021) ...........................................................................9, 17

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,

    2013 U.S. Dist. LEXIS 179190 (C.D. Cal. Dec. 5, 2013)..................................20

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*,

    2021 U.S. Dist. LEXIS 87268 (N.D. Cal. May 5, 2021) ...................................14

*Munday v. Navy Fed. Credit Union*,

    2016 U.S. Dist. LEXIS 193973 (C.D. Cal. Sep. 15, 2016)...................................7

*Musgrove v. Jackson Nurse Professionals, LLC*,

    2022 U.S. Dist. LEXIS 112339 (C.D. Cal. June 24, 2022) .................................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004)........................................................................11

*Nichols v. Noom, Inc.*,

    2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 2022)..................................13

*Reyes v. CVS Pharmacy, Inc.*,

    2016 U.S. Dist. LEXIS 84721 (E.D. Cal. June 28, 2016) ..................................14

*Rodriguez v. West Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ..............................................................................12

*Salazar v. King*,

    2022 U.S. Dist. LEXIS 215203 (C.D. Cal. Nov. 28, 2022) ...............................12

*Schaffer v. Litton Loan Servicing, LP*,

    2012 U.S. Dist. LEXIS 189830 (C.D. Cal. Nov. 13, 2012) ...............................15

*Schneider v. Chipotle Mexican Grill, Inc.*,

    336 F.R.D. 588 (N.D. Cal. 2020)........................................................................15

*Shvager v. Viasat, Inc.*,

    2014 U.S. Dist. LEXIS 200808 (C.D. Cal. Mar. 10, 2014) ...............................22

v

*Tait v. BSH Home Appliances Corp.*,

   2015 U.S. Dist. LEXIS 98546 (C.D. Cal. July 27, 2015).....................................................16

*Taylor v. Shutterfly, Inc.*,

   2021 U.S. Dist. LEXIS 237069 (N.D. Cal. Dec. 7, 2021) ...................................................7

**Other Authorities**

4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) ................................................................16

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................................8

Fed. R. Civ. P. 23(e)(2) ................................................................................................................9

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................................................12

Fed. R. Civ. P. 23(e)(2)(D)..........................................................................................................18

Motion for Final Approval            Case No. 2:22-cv-7386-FMO-RAO

## Memorandum of Points and Authorities

**I.    Introduction.**

The Parties have reached a hard-fought class-wide settlement in this case concerning alleged violations of California's Automatic Renewal Law ("ARL") and other consumer protection statutes pertaining to Defendant's Gopuff Fam Subscription Program ("Fam"). Under the Settlement, Class Members will receive monetary relief worth a total of $400,000 and programmatic relief in the form of measures to ensure Defendant's compliance with the ARL. This is an excellent outcome for the Class, especially given the significant risks presented by continued litigation.

On January 3, 2024, this Court reviewed the Settlement and granted preliminary approval. Dkt. 33 ("Preliminary Approval Order") at 20-21. The Court preliminarily certified the Settlement Class and preliminarily found the Settlement to be fair, reasonable, and adequate. *Id.* Following preliminary approval, the Court-appointed Settlement Administrator faithfully executed the approved notice plan. *See id.* at 18-19. Notice was near-universal and achieved an above-average claim rate. Dkt. 35-2 ("Shumway Decl.") ¶15; *see infra* §§III(A)-(B). And the Class's reaction was overwhelmingly positive: not a single Class Member objected to this Settlement, and only one opted out. Shumway Decl. ¶¶16-17; *see infra* §III(C).

Every factor that the Court analyzed at preliminary approval continues to favor final approval. Though the Court's review at preliminary approval was of course preliminary, the Court has already examined all of the material terms of the Settlement and addressed most of the factors relevant at final approval under Rule 23(e) and Ninth Circuit precedent. The only factor not yet considered—the Class's positive reaction to the Settlement after the successful administration of notice—bolsters the Court's preliminary finding of fairness, reasonableness, and adequacy. Therefore, the Court should grant final certification of the Settlement Class and grant final approval of the Settlement.

## II.   The Settlement.

### A.   The Settlement Class.

The Settlement Class, as conditionally certified by the Preliminary Approval Order, consists of all California residents who signed up for a free trial of Fam and who thereafter were enrolled in Fam and were charged at least one monthly subscription fee following the end of the free trial, between July 23, 2021, and February 6, 2023. Preliminary Approval Order at 20; *see* Dkt. 31-1 ("Agreement") §2.43. According to Defendant's records, there are 35,397 Class Members.[1] Shumway Decl. ¶6.

### B.   Direct benefits paid to the Settlement Class.

The Settlement Agreement requires Defendant to pay $400,000 in benefits to the Settlement Class. Agreement §2.46. Defendant will pay each Class Member an amount approximately equal to the subscription fee that the Class Member was charged for their first paid month of Fam—either $5.95 or $7.99, depending on when they signed up. *Id.* §5.2. In total, the Settlement Class will receive approximately $244,360 in direct benefits.[2] Dkt. 35-1 ("Franzini Decl.") ¶14.

The Agreement requires Defendant to make a payment to each Settlement Class Member in one of two ways, at the Class Member's election. Agreement §5.2. Settlement Class Members could either (1) file a claim and receive the payment to which they are entitled in cash, or (2) do nothing and automatically receive payment in the form of Gopuff credit, applicable toward the purchase of any product sold on Gopuff. *Id.* §§2.8, 5.2. The credit will not expire, and any minimum delivery fee will be waived on orders submitted with credits received in the Settlement. *Id.* §2.8. This automatic distribution procedure ensures that 100% of Class Members—even those who did not file a claim—

---

[1] At preliminary approval, the Parties had estimated that there would be 36,633 Class Members. Dkt. 31 ("Preliminary Approval Motion") at 4. Because the Parties' estimate for the number of Class Members was substantially accurate, all of the other estimates the Parties presented at preliminary approval (which were all based on the estimate for the number of Class Members) are substantially accurate too.

[2] As discussed below, the Settlement also provides significant non-monetary relief. Agreement §5.1; *see infra* §II(D).

will receive the compensation they are due.

To make a claim for cash relief, Settlement Class Members filled out and submitted a claim form online, or, if they preferred, mailed the form to the Settlement Administrator. *Id.* §6.2. The claim form was conveniently available on the Settlement Website. Class Members could choose to receive cash payments through an online service like PayPal, via a prepaid MasterCard, or in the form of a physical check delivered by the Settlement Administrator. *Id.* §§2.7, 6.5(e); *id.*, Ex. A (claim form showing these options). As discussed in greater detail below, 2,090 Class Members submitted a claim for cash relief. *See infra* §III(B).

If a Settlement Class Member did not file a claim for cash relief, they will automatically receive a credit that can be used on any product available for purchase on Gopuff. Agreement §2.8. Because Defendant sells numerous groceries and other consumer items, Class Members receiving credits can spend them on a wide variety of commonly used goods. Franzini Decl. ¶15. Plus, the credit will never expire, and any minimum delivery requirement will be waived on orders submitted with credits received in the Settlement. Agreement §2.8. This affords Class Members receiving credits maximum flexibility to use their benefits when and how they want. And, again, Class Members who preferred to receive their Settlement benefit in cash rather than Gopuff credit had the opportunity to file a claim for cash relief. This means that the Settlement is not a disfavored coupon settlement. Preliminary Approval Order at 15 & n.6.

**C.    Payment of administration costs, attorneys' fees, and incentive awards.**

On top of the direct payments discussed above, the Settlement provides that Gopuff will pay up to an additional $162,300 to cover notice and administration costs (up to $50,000), attorneys' fees (up to $100,000) and costs (up to $9,000), and an incentive award to the Class Representative ($1,500), as approved by the Court. *Id.* §§2.46, 8.1; Preliminary Approval Motion at 7-8; Shumway Decl. ¶18.

As of today, the Settlement Administrator has incurred $23,637.08 in notice and

administration costs. Shumway Decl. ¶18. And the Settlement Administrator's estimate that it will incur $45,300 in total costs to administer the Settlement through conclusion remains unchanged from its estimate at preliminary approval. *Id.* (estimating costs of $45,300, with a cap of $50,000); *see* Preliminary Approval Order at 2-3 (noting estimated costs of $45,300 and cap of $50,000).

In addition, Class Counsel requested a fee award of $100,000 and costs of $8,839.20. Dkt. 34 ("Motion for Attorneys' Fees, Costs, and Incentive Award") at 1. As explained in that motion, the requested fee award is consistent with the Ninth Circuit's 25% benchmark for fee awards in class actions and supported by each of the factors used to assess the reasonableness of attorneys' fees. *Id.* at 3-17. The requested reimbursement of litigation expenses is also reasonable. *Id.* at 17.

Class Counsel also requested an incentive award of $1,500 to the Class Representative. *Id.* at 18. Such an award is justified to compensate the Class Representative for his crucial service to the Class. *Id.*; Preliminary Approval Order at 18 (making "tentative[] find[ing] that the requested incentive payment is reasonable").

### D. Programmatic relief.

In addition to the monetary relief outlined above, the Settlement also provides significant programmatic relief to the Settlement Class to ensure Defendant's compliance with the ARL. After the case was filed, on February 6, 2023, Defendant re-designed its Fam disclosures to better inform consumers that Fam is an automatically renewing subscription. Agreement §5.1. The Settlement Agreement gives Class Counsel the authority to enforce Defendant's compliance with the ARL and require Defendant to make additional changes, if necessary, up to 90 days after the Settlement is effective. *Id.*

### E. Limited release of claims.

The Settlement Agreement provides a narrowly tailored release of only those claims that "arise from the same facts and claims alleged" in the Complaint. Agreement §11.2. As the Court found in granting preliminary approval, this release "adequately balances fairness to absent class members and recovery for the class with defendants'

business interest in ending this litigation with finality." Preliminary Approval Order at 17. Thus, the Settlement does not "contain[] an overly broad release of liability." *Id.* at 16.

## III. Settlement administration and notice.

### A. The notice provided to Class Members.

Angeion Group, the Court-appointed Settlement Administrator, administered notice to the Settlement Class as directed in the Preliminary Approval Order. Preliminary Approval Order at 20 (approving the proposed notice plan and naming Angeion Group the Settlement Administrator). First, Angeion collected a Class List consisting of names, emails, and addresses from Defendant. Shumway Decl. ¶6. The list identified 35,397 unique Class Members. *Id.* Using this list, Angeion sent direct email notice to all Class Members with valid email addresses, totaling 33,665 Class Members. *Id.* ¶¶7-8. The notice forms—approved by the Court in the Preliminary Approval Order—provided an explanation of the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, a list of relevant deadlines as set by the Court, and a statement about the release of claims. Preliminary Approval Order at 20 (approving "the form, substance, and requirements" of the notice forms); Agreement, Ex. B (showing the notice forms). The notices also provided instructions on how Class Members could file a claim for a cash payment and how they could opt out of or object to the Settlement, along with the respective deadlines to do so. Preliminary Approval Order at 19 & n.7; Agreement, Ex. B. Email notice was successfully delivered to 33,473 Class Members, approximately 95% of Class Members. Shumway Decl. ¶9.

Where an email address was invalid or email notice was undeliverable, Angeion provided mail notice—via the postcard notice form also approved by this Court—to the Class Member's mailing address associated with their Gopuff account. *Id.* ¶10. Mail notice was sent to an additional 1,915 Class Members in this manner. *Id.* ¶¶10-12 (noting mail notice was returned as undeliverable to 499 Class Members, 299 of which were re-mailed to updated addresses determined through an address verification search).

In total, direct notice was successful for approximately 99% of the Class. *Id.* ¶¶6-12. This near-universal notice is an outstanding result, far more than is required. *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 U.S. Dist. LEXIS 1452173, at *19 (N.D. Cal. June 26, 2017) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23."); *Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118, at *18 (S.D. Cal. Nov. 14, 2013) ("Rule 23 only requires that the notice be the 'best practicable under the circumstances.' It need not be perfect." (citations omitted)); *see, e.g.*, *Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011) (finding notice sufficient where it was "estimated to reach 75-83 percent of the class").

In addition to direct notice, Angeion designed and hosted a Settlement Website providing Class Members with information about the Settlement. Shumway Decl. ¶13 (explaining that, as of May 13, 2024, the Website had received 1,403 page views). The Website provides access to relevant documents concerning the Settlement, including the Settlement Agreement, the Preliminary Approval Motion and Order, and, after it was filed, Class Counsel's Motion for Attorneys' Fees, Costs, and Incentive Award (and all accompanying documents).[3] It also includes a page dedicated to answering "Frequently Asked Questions" concerning the claims in the lawsuit, the Settlement benefits and structure, the process to file a claim form, the steps to opt out of or object to the Settlement, and Class Counsel's role in the Settlement and requested fees.[4] And it offers a fillable version of the claim form that Class Members could easily complete and submit online.[5] In case Class Members have additional questions, the Settlement Website (along with the distributed notice forms) lists the contact information of the Settlement Administrator, including the number of a toll-free hotline that has run 24 hours a day, 7

---

[3] The present Motion, along with supporting documents, will be uploaded to the Settlement Website after they are filed with the Court. The relevant page of the Settlement Website is available at https://www.gopuff-settlement.com/important-documents.

[4] The FAQ page is available at https://www.gopuff-settlement.com/faqs.

[5] The online claim form is available at https://www.gopuff-settlement.com/submit-claim.

6

days a week since notice was first disseminated. Shumway Decl. ¶14.

### B. The optional claims process.

As explained above, Settlement Class Members had the option to file a claim form to receive cash relief. The claim form was simple to fill out and could be submitted online or by mail. Class Members received clear instructions on how to access and file a claim form.[6] Agreement, Ex. B (showing notice forms that explain how to file a claim form).

The successful administration of notice is demonstrated by the above-average cash claim rate of 5.9%. Shumway Decl. ¶15; *see Munday v. Navy Fed. Credit Union*, 2016 U.S. Dist. LEXIS 193973, at *23 n.1 (C.D. Cal. Sep. 15, 2016) ("[D]istrict courts have recognized that '[t]he prevailing rule of thumb with respect to consumer class actions is [a claim rate of] 3-5 percent.'"); *see, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval of settlement where less than 3.4% of class members filed claims). And this rate is particularly impressive given that the Settlement provides for automatic relief to Class Members, meaning that Class Members who preferred to receive their benefits under the Settlement in the form of Gopuff credit did not need to file a claim. *See, e.g.*, *Taylor v. Shutterfly, Inc.*, 2021 U.S. Dist. LEXIS 237069, at *4, *21 (N.D. Cal. Dec. 7, 2021) (approving settlement where cash claim rate was approximately 2.5% and promotional codes were distributed to class members who did not file a claim).

### C. Opt-outs and objections.

As explained above, Settlement Class Members were provided specific instructions on how to opt out of or object to the Settlement, in both direct notice forms and on the Settlement Website. Only one Class Member requested to be excluded from the Settlement, and not a single Class Member filed an objection. Shumway Decl. ¶17.

---

[6] An explanation of how to file a claim form also appeared on the Settlement Website's FAQ page, available at https://www.gopuff-settlement.com/faqs.

**D.    CAFA notice.**

Angeion served notice of the proposed Settlement to state and federal officials as required by CAFA. *Id.* ¶5. No government official has objected to the Settlement in response to that notice.

**IV.    The Court should finally approve the Settlement.**

**A.    The Court should grant final certification of the Settlement Class.**

The Court "preliminarily certifie[d] the class, as defined in [§]2.43 of the Settlement Agreement (Dkt. 31-1), for the purposes of settlement." Preliminary Approval Order at 20. Addressing the relevant Rule 23(a) and 23(b)(3) requirements in turn, the Court explained how each is satisfied by the Settlement Class. *Id.* at 8 (numerosity), 8-9 (commonality), 9-10 (typicality), 10-11 (adequacy), 11-12 (predominance), 13-14 (superiority). No circumstance has changed since then, so the Court should reach the same conclusion here for all the reasons set forth in the Court's Preliminary Approval Order. *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *241 (C.D. Cal. July 24, 2013) (certifying class and stating "[n]othing has changed in the five-month period between that preliminary class certification and today that suggests to the Court that the class should be decertified").

**B.    The notice plan fairly and adequately informed Class Members of the Settlement.**

In preliminarily approving the Settlement, the Court found that the proposed procedure for and the proposed content of notice "constitute the best practicable notice to class members," as mandated by Rule 23(c)(2)(B), and "comply with the requirements of due process." Preliminary Approval Order at 19. As described above, Angeion Group implemented the notice plan approved by the Court. *See supra* §III(A). Therefore, for the reasons set forth in the Court's Preliminary Approval Order, the notice process fairly and adequately informed Settlement Class Members of the nature of the action and other requisite terms of the Settlement.

### C.    The Settlement is fair, reasonable, and adequate.

A court may approve a class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair, reasonable, and adequate, a court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.* This inquiry can include the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021) (noting that after the 2018 amendment to Rule 23(e), "it is still appropriate for district courts to consider the [*Churchill*] factors in their holistic assessment of settlement fairness").

In short, "[c]ourts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (cleaned up). And in weighing the factors, courts must remember that "[s]ettlement is the offspring of compromise; the question … is not whether the final product could be prettier, smarter or snazzier, but whether it is fair,

9

adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, Class Counsel negotiated an excellent settlement that is fair, adequate, and free from collusion. All relevant factors weigh in favor of final approval.

### 1. The Class Representative and Class Counsel adequately represented the Class.

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks omitted). "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Throughout the litigation and settlement negotiations, the Class Representative and Class Counsel adequately represented the Class. Neither the Class Representative nor Class Counsel have any conflicts of interest with absent Class Members. Dkt. 34-2 ("Beer Decl. in Support of Motion for Attorneys' Fees, Costs, and Incentive Award") ¶7; Dkt. 35-1 ("Franzini Decl.") ¶6. In granting preliminary approval of the Settlement, the Court determined that "Plaintiff[] ha[s] the same interests as the absent Class Members." Preliminary Approval Order at 10 (quoting *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 442 (E.D. Cal. 2013)). And the Class Representative and Class Counsel vigorously prosecuted this action. With Plaintiff's diligent assistance, Class Counsel conducted a thorough investigation of the claims in this case. Beer Decl. in Support of Motion for Attorneys' Fees, Costs, and Incentive Award ¶8; Franzini Decl. ¶¶7-9. Class Counsel also brought to the case their substantial experience with class actions, including cases involving deceptive advertising practices. Franzini Decl. ¶¶3-6. At preliminary approval, the Court found "no issues as to the adequacy of representation." Preliminary Approval Order at 11. No contrary evidence has been presented since then, so the Court should

reach the same conclusion here for the reasons set forth in the Preliminary Approval Order.

### 2. The Settlement is the product of arduous, well-informed, and non-collusive negotiations at arm's length.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see Churchill*, 361 F.3d at 575 (listing "the extent of discovery completed and the stage of the proceedings" as a factor for courts to consider at final approval). "[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see, e.g., Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 210946, at *14 (C.D. Cal. Nov. 21, 2022) (finding that while "no formal discovery took place," the parties "did conduct informal pre-mediation discovery which generally supports final approval").

The Settlement resulted from arm's-length negotiations, conducted through a neutral mediator. The enlistment of an "experienced mediator" supports the absence of collusion. Preliminary Approval Order at 15; *see Eisen v. Porsche Cars N. Am., Inc.*, 2014 U.S. Dist. LEXIS 14301, at *14 (C.D. Cal. Jan. 30, 2014) (collecting cases) ("[W]here the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive."). And mediation took place only after the Parties conducted a careful analysis of the case, discussed their positions on liability and damages in substantive mediation briefs, and exchanged informal discovery of crucial and sensitive information—including Defendant's subscription and sales data. Franzini Decl. ¶9; Preliminary Approval Order at 14. The Parties' arduous negotiations continued for several months after the mediation. Franzini Decl. ¶10. These facts led the Court to conclude that "the parties thoroughly investigated and considered their own and the opposing party's positions." Preliminary Approval Order at 15. As was the case at preliminary approval, there remains "no evidence that the settlement is the product of

11

fraud or overreaching by, or collusion between, the negotiating parties." Preliminary Approval Order at 15. That the Settlement followed pre-mediation discovery and arm's-length negotiations weighs in favor of final approval.

> **3.** **The Settlement provides excellent relief to the Class, in light of the risks of continued litigation, the effectiveness of the method of distribution, and the reasonableness of the requested attorneys' fees.**

Rule 23(e) next instructs courts to assess whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C); *see Churchill*, 361 F.3d at 575 (listing "the amount offered in settlement" as a factor for courts to consider at final approval).

In conducting this assessment, courts should recognize that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *see Churchill*, 361 F.3d at 575 (listing "the experience and views of counsel" as a factor for courts to consider at final approval). Class counsel's "familiarity with th[e] litigation and previous experience with cases" means their assessment of the settlement merits "considerable weight." *Salazar v. King*, 2022 U.S. Dist. LEXIS 215203, at *10 (C.D. Cal. Nov. 28, 2022) (alteration in original).

Here, the Settlement provides significant relief to the Settlement Class. As explained above, the Settlement provides Class Members with a total of $400,000 in monetary relief (approximately $244,360 in direct benefits and $155,640 to fund litigation and administration costs, attorneys' fees, and an incentive award), as well as programmatic relief in the form of revisions to Defendant's disclosures to ensure

compliance with the ARL. *See supra* §§II(B)-(D); *Broomfield v. Craft Brew Alliance, Inc.*, 2020 U.S. Dist. LEXIS 74801, at *80 (N.D. Cal. Feb. 5, 2020) (noting that "the Ninth Circuit and courts in this district have included attorneys' fees, settlement administration costs, and litigation expenses" in calculating the total value of a settlement for purposes of evaluating fees); Motion for Attorneys' Fees, Costs, and Incentive Award at 5-8 (discussing the value of the Settlement).

The monetary relief provided to Class Members is substantial. Under the Settlement, Defendant will create a $400,000 common fund to benefit the Class, amounting to nearly half (48%) of Defendant's total liability to Class Members. Franzini Decl. ¶17; *see* Preliminary Approval Motion at 20 & n.4 (measuring the value of Settlement against Defendant's total liability). This is an excellent outcome that exceeds recoveries approved in this Circuit, including in similar cases. *See* Motion for Attorneys' Fees, Costs, and Incentive Award at 8-9 (collecting cases).

In addition to the monetary benefits, the Settlement provides for significant programmatic relief. As described in greater detail above, after this case was filed, Defendant made changes to its website and app disclosures to better inform consumers that Fam is an automatically renewing subscription. *See supra* §II(D). The Settlement allows Class Counsel to require Defendant to make any additional changes, if necessary, up to 90 days after the Settlement is effective. *Id.* This relief will protect consumers from future harm and adds to the value of the Settlement. *See Nichols v. Noom, Inc.*, 2022 U.S. Dist. LEXIS 123146, at *30 (S.D.N.Y. July 12, 2022) (finding non-monetary relief designed to prevent future ARL violations "valuable" to "the class and future customers of [defendant]"); Motion for Attorneys' Fees, Costs, and Incentive Award at 8-9 (discussing value of the Settlement's non-monetary relief).

Thus, the Settlement provides excellent relief, especially when considering the four factors listed in Rule 23(e)(2)(C).

### a.    Costs, risks, and delay.

"When considering 'the costs, risks, and delay of trial and appeal,' courts in the

Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *29 (C.D. Cal. Mar. 4, 2024) (citation omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see Churchill*, 361 F.3d at 575 (listing these factors as three of eight factors for courts to consider at final approval).

In reaching the Settlement, Class Counsel reasonably balanced the strength of Plaintiff's case with the significant risks and substantial costs of continued litigation. While Class Counsel remains confident in the strength of the claims, "[t]he parties contest liability, and this settlement arises very early in the litigation, before any motions practice or class certification." *Klee v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 88270, at *20 (C.D. Cal. July 7, 2015); *see Reyes v. CVS Pharmacy, Inc.*, 2016 U.S. Dist. LEXIS 84721, at *22 (E.D. Cal. June 28, 2016) (Where "litigation remain[ed] in the early stages and [was] likely to continue for some time," settlement at that "stage appropriately balance[d] counsel's ability to develop an informed position with the desire to minimize risk, expense, and delay.").

As the Court recognized in granting preliminary approval, continued litigation of this action would present "significant risks" to potential class-wide recovery. Preliminary Approval Order at 16. These risks include the serious likelihood that, if litigation had continued, Defendant would have filed a motion to compel arbitration of Plaintiff's claims based on an arbitration provision in Defendant's terms of service. *See id.*; Franzini Decl. ¶18. Since Defendant asserted that its terms also include a class action waiver, a successful arbitration motion would have barred the class claims—very likely resulting in no relief for the Class whatsoever. *See id.*; *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, 2021 U.S. Dist. LEXIS 87268, at *16 (N.D. Cal. May 5, 2021) (finding a settlement adequate in light of the risk presented by a class action waiver, "which would likely reduce the overall recovery since 'typically only a fraction of individuals pursue arbitration'"); *Carter v. XPO Logistics, Inc.*, 2019 U.S. Dist. LEXIS 230601, at *9 (N.D.

Cal. June 27, 2019) (noting, in approving a settlement, that continued litigation would have presented "a risk that some if not all putative Class Members could be forced into individual arbitration").

In addition to the risks posed by arbitration, Plaintiff faces multiple substantive challenges to his claims. In particular, Defendant has already contested Plaintiff's ability to establish standing, prove liability, and certify a class. Franzini Decl. ¶18; Preliminary Approval Motion at 18. Class Counsel, while remaining confident in the strength of Plaintiff's case, recognizes that Defendant's arguments would present real obstacles to securing class-wide relief—which supports final approval. *See Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *19 (C.D. Cal. Mar. 4, 2024) ("[That] Defendant also maintains the strength of its position and raised 'several substantive arguments' that would make continued litigation 'complex and risky' … weigh[s] in favor of approving the settlement."); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 597 (N.D. Cal. 2020) ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.").

Moreover, regardless of Class Counsel's success in litigating this case going forward, continued litigation would impose significant expense and delay, cutting into any ultimate relief achieved for the Class. *See McKenzie v. Fed. Express Corp.*, 2012 U.S. Dist. LEXIS 103666, at *9 (C.D. Cal. July 2, 2012) ("The central factor relating to the 'risk, expense, complexity, and likely duration' … analysis is the expense of litigation."). Plus, "[e]ven if the class were ultimately to prevail …, trial and appeals would significantly delay class members' ability to obtain compensation." *Schaffer v. Litton Loan Servicing, LP*, 2012 U.S. Dist. LEXIS 189830, at *36 (C.D. Cal. Nov. 13, 2012); *see Bravo v. Gale Triangle, Inc.*, 2017 U.S. Dist. LEXIS 77714, at *29 (C.D. Cal. Feb. 16, 2017) ("The Court finds that '[i]n light of the risks and costs of continued litigation, the immediate rewards to class members are preferable.'"). So, "[t]he value of any judgment would therefore be discounted by the delay the class members would face in actually obtaining that judgment." *Tait v. BSH Home Appliances Corp.*, 2015 U.S. Dist. LEXIS 98546, at *21

(C.D. Cal. July 27, 2015). "By contrast, the proposed settlement provides certain, timely, and substantial relief." *Id.*; *see In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

In short, continued litigation would present a significant risk of the Class recovering nothing, and a certainty of increased expenses and delay. Class Counsel—who have substantial experience with consumer class actions, and false advertising cases in particular—weighed all of this against the strength of the case in negotiating the Settlement. Franzini Decl. ¶¶3-6, 18-19. Thus, the Court should reaffirm its finding that the Settlement "is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks and the costs, and delay of trial and appeal." Preliminary Approval Order at 16.

### b.    Method of distribution.

In assessing the "effectiveness of any proposed method of distributing relief to the class," courts must keep in mind that "[t]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Musgrove v. Jackson Nurse Professionals, LLC*, 2022 U.S. Dist. LEXIS 112339, at *13-14 (C.D. Cal. June 24, 2022) (quoting 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.)).

Here, the automatic distribution method ensures that all Class Members receive the relief they are due. As explained above, Class Members will receive either a cash-equivalent Gopuff credit to be used on any products sold through Gopuff, or, at their election via a claim form, a cash payment. *See supra* §§II(B), III(B). Even if Class Members took no action, they will automatically receive payment in the form of Gopuff credit. *Id.* For Class Members choosing the cash payment, the claim form was simple to fill out and submit—and allowed Class Members to select a preferred payment method from several options. *Id.* The distribution method was designed to deliver maximum

relief to the entirety of the Class, in the simplest and fastest manner.

### c.    Attorneys' fees.

The Ninth Circuit has interpreted the Rule 23(e) inquiry into attorneys' fees as "imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (internal quotation marks omitted). Courts must "balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Id.*

Here, Class Counsel has requested reasonable fees in light of the relief for the Class. As explained above, the Settlement provides Class Members with not only $400,000 in monetary relief but also significant programmatic relief. Class Counsel has applied to the Court for $100,000 in fees. *See generally* Motion for Attorneys' Fees, Costs, and Incentive Award. This request is in line with the presumptively reasonable 25% benchmark set by this Circuit—without even taking into account the value provided by the programmatic relief. *See id.* at 5-8; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."). And no Class Members have objected to Counsel's fees request. *See infra* §IV(C)(5).

Courts must also scrutinize the proposed settlement for "signs that the parties had negotiated an unreasonable amount of attorneys' fees." *McKinney-Drobnis*, 16 F.4th at 608. The Ninth Circuit has identified the following "subtle signs" of collusion: "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement … ; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (citations and internal quotation marks omitted).

None are present here. First, as explained above, Class Counsel will not receive a

"disproportionate distribution" from the Settlement Fund or be "amply rewarded" while the Class receives no monetary distribution. Second, the Parties did not negotiate any "clear sailing" provision. Franzini Decl. ¶10. Defendant was expressly entitled to "challenge the amount of Class Counsel's request" for fees or costs (though Defendant ultimately chose not to do so). Agreement §8.1. Third, there is no reverter provision. Since the Settlement calls for a non-reversionary common fund, under no circumstances will funds revert to Defendant. *Id.* §2.46 (providing for a non-reversionary Settlement Fund), §5.2 (providing for pro rata increase in payments to Class Members if excess funds remain in the Settlement Fund after payment of administration costs, attorneys' fees and costs, and the incentive award), §6.5(e) (providing for any funds resulting from expired benefit checks to be sent to Feeding America).

### d.    Additional agreements.

Apart from the Settlement Agreement and Angeion's agreement to cap notice and administration fees at $50,000, both of which the Court reviewed in the Preliminary Approval Order, no agreements have been made in connection with the Settlement. Preliminary Approval Order at 2-3, 20.

### 4.    The Settlement treats Class Members equitably.

Another consideration at final approval of a class settlement is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Of particular concern is whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1079 (C.D. Cal. 2023).

Here, the Settlement does not improperly prioritize the Class Representative. Class Counsel has requested a modest incentive award of $1,500 to compensate Mr. Beer for his service to the Class. Motion for Attorneys' Fees, Costs, and Incentive Award at 18. As explained further in that motion, the requested award—amounting to less than 0.5% of the Settlement Fund—is justified in light of Mr. Beer's diligence and dedication to the cause. *Id.*; Beer Decl. in Support of Motion for Attorneys' Fees, Costs, and

18

Incentive Award ¶8. As the Court noted at preliminary approval, the amount is "reasonable." Preliminary Approval Order at 18. And given that the Settlement is not contingent on the Court's approval of the incentive award, no conflict of interest arises between Mr. Beer and the rest of the Class. *Id.* at 18-19; *see Ahmed v. HSBC Bank USA*, 2019 U.S. Dist. LEXIS 104401, at *34 (C.D. Cal. June 21, 2019) (Olguin, J.) ("Moreover, because the Parties agree that the Settlement Agreement shall remain in force regardless of any incentive award, the awards here are unlikely to create a conflict of interest between the named plaintiffs and absent class members.").

The Settlement also does not improperly favor any one segment of the Class. Class Members will receive different payments based on when they signed up for Fam— a distinction that accounts for the fact that those who signed up later in the class period paid a higher subscription fee ($7.99) than those who signed up earlier ($5.95). Agreement §5.2; Preliminary Approval Order at 3 & n.2 (acknowledging subscription fee increase in October 2022). And the Settlement provides that any excess funds remaining after distribution and payment of administration costs, attorneys' fees and costs, and the incentive award will be distributed to Class Members pro rata—which further supports that the Class is treated equitably.[7] Plus, regardless of whether a Class Member chooses to receive their Settlement payment in cash or Gopuff credit, it will have the same value. Agreement §5.2; Motion for Attorneys' Fees, Costs, and Incentive Award at 9 (explaining that, unlike many other settlements providing cash and credit options, this Settlement does not feature any penalty for choosing cash or any cap or restrictions on the number of Class Members who can choose cash). Thus, this factor should weigh in favor of final approval.

---

[7] The Settlement also provided for a pro rata reduction in payments if, after payment of administration costs, attorneys' fees and costs, and the incentive award, the remaining funds were insufficient to compensate Class Members for their initial subscription fee. But, as the Parties expected, this did not occur. Preliminary Approval Motion at 4-5 (explaining why such an outcome was unlikely).

19

5.      **The Class's reaction to the Settlement was overwhelmingly positive.**

"In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement." *Judson v. Goldco Direct, LLC*, 2021 U.S. Dist. LEXIS 258173, at *15 (C.D. Cal. June 11, 2021); *see Churchill*, 361 F.3d at 575 (listing "the reaction of the class members to the proposed settlement" as a factor for courts to consider at final approval). "In assessing the reaction of the class, courts have considered (1) the views of the class representatives; (2) the number of requests for exclusion or opt-outs compared with the total number of members in the class; and (3) the number and vociferousness of the objectors." *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 U.S. Dist. LEXIS 179190, at *62-63 (C.D. Cal. Dec. 5, 2013) (citations and internal quotation marks omitted). Here, all three considerations weigh in favor of final approval.

The Class Representative's reaction was positive. Mr. Beer favors the Settlement and believes that it is in the best interests of the Class. Beer Decl. in Support of Motion for Attorneys' Fees, Costs, and Incentive Award ¶7. His opinion further supports the fairness, adequacy, and reasonableness of the Settlement. *See Me. State Ret. Sys.*, 13 U.S. Dist. LEXIS 179190, at *63 ("Courts afford special weight to the opinions of class representatives because their views may be important in shaping the agreement and they may have a better understanding of the case than most members of the class." (internal quotation marks omitted)).

The reaction of absent Class Members was also positive. Only one Class Member requested to be excluded from the Settlement. Shumway Decl. ¶16. And not a single Class Member filed an objection, whether to the Settlement's terms or to Class Counsel's fees and incentive award request. *Id.* ¶17. Such a reaction shows that the Class—which consists of more than 35,000 people—overwhelmingly approves the Settlement. *See, e.g., Kaye v. Immunocellular Therapeutics, Ltd.*, 2019 U.S. Dist. LEXIS 201657, at *16 (C.D. Cal. Nov. 19, 2019) (Olguin, J.) (finding a "lack of objections and [a] single request for

exclusion," from approximately 36,000 class members, to be a "very positive" class reaction, "support[ing] approval of the settlement"); *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *18 (C.D. Cal. Aug. 31, 2022) (Olguin, J.) (finding "no objections and only 14 requests for exclusion," among a more than 50,000-member class, to be a "positive reaction of the class support[ing] approval of the settlement"). Courts often approve settlements that are met with exclusions and objections—so the singular exclusion and absence of objections here especially favor approval. *See, e.g.,* *Churchill*, 361 F.3d at 577 (affirming approval of settlement where "45 of the approximately 90,000 notified class members objected to the settlement" and 500 opted out); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding class reaction to be "overwhelming[ly] positive" and "support[ing] settlement" where 4.86% of the class opted out). And this outcome is particularly notable because the notice plan was robust and effective—as explained above, approximately 99% of Class Members received direct notice by either email or mail. *See supra* §III(A). The distributed notice forms provided the substantive details of the Settlement (and Class Counsel's fees request) and explained how to opt out or object. *Id.* Still, only one Class Member chose to opt out of the Settlement, and no Class Member filed an objection.

The high claim rate also shows that the Class approves of the Settlement. 5.9% of the Class filed a claim form to receive their Settlement award in cash. *See supra* §III(B). As described above, this is a higher-than-average claim rate, especially given that Class Members do not need to file a claim to receive relief. *See id.* The high claim rate reflects the Class's engagement with, and approval of, the Settlement. *See Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *29 (C.D. Cal. Mar. 4, 2024) (finding that "the absence of objections and the claim rate [of 7.5%] weigh[ed] in favor of final approval").

\* \* \*

Each of the factors considered by courts in evaluating proposed class settlements at final approval confirms that the Settlement reached in this case is fair, reasonable, and

21

adequate.[8] Thus, the Court should finally approve the Settlement.

**V.     Conclusion.**

For the foregoing reasons, the Motion should be granted.

Dated: May 13, 2024                          Respectfully submitted,

                                             By: */s/ Simon Franzini*
                                             Simon Franzini (Cal. Bar No. 287631)
                                             simon@dovel.com
                                             Grace Bennett (Cal. Bar No. 345948)
                                             grace@dovel.com
                                             **DOVEL & LUNER, LLP**
                                             201 Santa Monica Blvd., Suite 600
                                             Santa Monica, California 90401
                                             Telephone: (310) 656-7066
                                             Facsimile: (310) 656-7069

                                             *Attorneys for Plaintiff*


                                             By: */s/ Courtney Baird*
                                             Courtney L. Baird (SBN 234410)
                                             E-mail: clbaird@duanemorris.com
                                             **DUANE MORRIS LLP**
                                             865 South Figueroa Street, Suite 3100
                                             Los Angeles, CA 90017
                                             Telephone: 619 744 2285
                                             Facsimile: 619 923 3115

                                             Ayad Mathews (SBN 339785)

---

[8] Courts also consider "the presence of a governmental participant." *Churchill*, 361 F.3d at 575. Here, this factor is largely "inapplicable and neutral because no government entity participated in the case." *Shvager v. Viasat, Inc.*, 2014 U.S. Dist. LEXIS 200808, at *31 (C.D. Cal. Mar. 10, 2014). However, as explained above, the Parties, through the Settlement Administrator, provided notice of the Settlement to government entities as required by CAFA. *See supra* §III(D). Despite this notice, no government entities "objected to the settlement or submitted adverse comments concerning it"—which further supports the conclusion that "the settlement is fair and reasonable." *Shvager*, 2014 U.S. Dist. LEXIS 200808, at *31; *see Barr*, 2024 U.S. Dist. LEXIS 39068, at *28 (finding this factor "weighs slightly in favor of final approval" where non-participant governmental officials were served CAFA notice and filed no objections).

E-mail: amathews@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile: 619 744 2201

*Attorneys for Defendant*

23