UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BEER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GOBRANDS, INC.,<br><br>    Defendant. | Case No. CV 22-7386 FMO (RAOx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to the Joint Motion for Final Approval of Class Action Settlement (Dkt. 35, "Motion"), and plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award (Dkt. 34, "Fee Motion"), and the oral argument presented during the final fairness hearing held on June 6, 2024, the court concludes as follows.

## BACKGROUND

On October 11, 2022, plaintiff filed this putative class action against defendant GoBrands, Inc. ("defendant" or "GoBrands"), asserting claims for violation of California's: (1) Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, et seq.; (2) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and (3) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq. (See Dkt. 1, Complaint at ¶¶ 47-75).

Plaintiff alleges that defendant, an online grocery shopping and delivery service, violated the ARL, which requires companies to provide "clear and conspicuous" disclosures and obtain "affirmative consent" from consumers to enroll in defendant's automatic renewal plan. (See Dkt. 1, Complaint at ¶¶ 2-4). According to plaintiff, defendant offers a subscription service, the GoPuff

Fam Subscription Program ("Fam"), where consumers pay a monthly charge of $5.95 for grocery delivery. (Id. at ¶¶ 3, 17). Fam automatically renews on a monthly basis. (Id.). To enroll consumers, defendant offers a free 14-day trial offer, and at the end of the trial period, the consumers are automatically enrolled in the monthly subscription plan. (Id. at ¶¶ 4, 18). However, plaintiff alleges that defendant does not provide clear and conspicuous disclosures or obtain affirmative consent before enrolling consumers in the auto-renewal plan. (Id.); (see also id. at ¶¶ 19-33) (describing free-trial enrollment process).

On May 26, 2023, the parties filed a status report indicating that they had "reached an agreement[.]" (See Dkt. 26, Fifth Joint Status Report at 4); (Dkt. 33, Court's Order of January 3, 20024 ("Preliminary Approval Order" or "PAO") at 2). The parties have defined the settlement class as "all California residents who signed up for a GoPuff 'Fam' free trial and who thereafter were enrolled in the Fam program and charged at least one monthly subscription fee following the end of the free trial, during the Class Period." (Dkt. 31-1, Class Action Settlement Agreement ("Settlement Agreement") at ¶ 2.43); (Dkt. 33, PAO at 2). The Class Period is defined as the period "commencing July 23, 2021 and ending on February 6, 2023[.]" (Dkt. 31-1, Settlement Agreement at ¶ 2.16); (Dkt. 33, PAO at 2).

Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $400,000, (see Dkt. 31-1, Settlement Agreement at ¶ 2.46); (Dkt. 33, PAO at 2), which will be used to pay class members, administration costs, attorney's fees and costs, and a service award to plaintiff.[1] (See id.). The settlement provides for up to $100,000 in attorney's fees (25% of the gross settlement fund), (Dkt. 31-1, Settlement Agreement at ¶ 8.1); (Dkt. 33, PAO at 2); costs not to exceed $9,000, (see id.); and a service award of $1,500 for Beers. (Dkt. 31-1, Settlement Agreement at ¶ 8.3); (Dkt. 33, PAO at 2). The settlement administrator, Angeion Group ("Angeion"), (Dkt. 31-1, Settlement Agreement at ¶ 6.1); (Dkt. 33, PAO at 20), will be paid no more than $50,000. (See Dkt. 33, PAO at 2-3).

---

[1] In addition to monetary relief, the settlement provides for programmatic relief. According to the parties, after this action was filed, defendant re-designed its Fam disclosures to ensure that consumers have the requisite ARL notice. (See Dkt. 31-1, Settlement Agreement at ¶ 5.1); (Dkt. 33, PAO at 3-4).

The payments to class members will consist of either a Credit Benefit or a Cash Benefit. (See Dkt. 31-1, Settlement Agreement at ¶ 2.46); (Dkt. 33, PAO at 3). Credit Benefit(s) are "automatic account credits issued by GoPuff to each Settlement Class Member unless the Settlement Class Member files a Cash Benefit Claim[.]" (Dkt. 31-1, Settlement Agreement at ¶ 2.8); (Dkt. 33, PAO at 3). This benefit, which will not expire, will "be applied towards a purchase made through GoPuff." (Dkt. 31-1, Settlement Agreement at ¶ 2.8); (Dkt. 33, PAO at 3). Cash Benefit(s) "are the form of cash payment issued for a valid Cash Benefit Claim[2] as determined by the Settlement Administrator and in accordance with [the Settlement] Agreement." (Dkt. 31-1, Settlement Agreement at ¶ 2.9) (footnote added); (Dkt. 33, PAO at 3). Each class member will receive a payment (either in the form of a credit or cash) "equal to the subscription fee they were charged for the first paid month of their GoPuff Fam subscription." (Dkt. 31-1, Settlement Agreement at ¶ 5.2); (Dkt. 33, PAO at 3). The payment amount will "equal $5.95 or $7.99, depending on when a Settlement Class Member signed up."[3] (Dkt. 31-1, Settlement Agreement at ¶ 5.2); (Dkt. 33, PAO at 3). If, after payment of administrative costs, attorney's fees and costs, and the service award to plaintiff, there are insufficient funds to make payments to class members in accordance with their initial subscription, the payments will be reduced pro rata. (See Dkt. 31-1, Settlement Agreement at ¶ 5.2); (Dkt. 33, PAO at 3).

On January 3, 2024, the court granted preliminary approval of the settlement, appointed Angeion as the settlement administrator, and directed Angeion to provide notice to the class. (See Dkt. 33, PAO at 20). Angeion implemented the notice program approved by the court. (See Dkt. 35, Memorandum of Points and Authorities ("Memo") at 5-7); (Dkt. 35-2, Declaration of Jazminee Shumway of Angeion Group, LLC Re: Implementation of Notice Plan & Administration

---

[2] The Cash Benefit(s) Claim "means a request for a cash payment in lieu of a Credit Benefit[.]" (Dkt. 31-1, Settlement Agreement at ¶ 2.10); (see also id. at ¶ 2.11); (Dkt. 31-2, Exh. A, Claim Form).

[3] The monthly fee for the majority of consumers was $5.95, but increased to $7.99 in October 2022. (Dkt. 33, PAO at 3 n. 2).

("Shumway Decl.") at ¶¶ 6-13); (id., Exh. B, Class Notice).  As of May 8, 2024,[4] Angeion had received one request for exclusion, (see Dkt. 35-2, Shumway Decl. at ¶ 16), and no objections. (See id. at ¶ 17); (see, generally, Dkt.) (no objections received by the court).

Plaintiff now seeks:  (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff.  (See Dkt. 35, Motion); (Dkt. 34, Fee Motion).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23[5] provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted).  A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]"  In re Hyundai & Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019) (en banc).  The court may not "delete, modify or substitute certain provisions."  Id. (internal quotation marks omitted).  "[T]he settlement must stand or fall as a whole."  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 630 (9th Cir. 1982).

Approval of a class action settlement requires the court to conduct a two-step inquiry.[6] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied.  Second, it must conduct a hearing to determine whether the settlement is "fair,

---

[4] The deadline for class members to opt-out or file objections to the settlement was May 6, 2024.  (See Dkt. 33, PAO at 21).

[5] All further "Rule" references are to the Federal Rules of Civil Procedure.

[6] If the class action is governed by CAFA, the court must also assess whether CAFA's notice requirements have been met.  See 28 U.S.C. § 1715(d).  Here, CAFA notice was provided to appropriate state and federal agencies.  (See Dkt. 35-2, Shumway Decl. at ¶ 5); (id., Exh. A, CAFA Notice).

reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-Drobnis, 16 F.4th at 608 (same); Briseño v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate'") (citing Fed. R. Civ. P. 23(e)(2)(C)). Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties

negotiate a 'clear sailing' arrangement[;]"[7] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]"  Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

## DISCUSSION

I.  FINAL APPROVAL OF CLASS SETTLEMENT.

    A.    Class Certification.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).  (See Dkt. 33, PAO at 8-14, 20).  Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).  See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).  Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B.    Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the Class Notice and notification procedures.  (See Dkt. 33, PAO at 18-19).  As discussed above, the notice program was implemented by Angeion.  Based on the record and its prior findings, the court finds that the Class Notice, (see Dkt. 35-2, Exh. B, Class Notice), and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed

---

[7] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."  Id. at 940 n. 6; Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted).

settlement, the effect of the action and release of claims, and the class members' right to object to the proposed settlement. See Fed. R. Civ. P. 23(c)(2)(B).

### C. Whether the Class Settlement Is Fair, Adequate and Reasonable.[8]

#### 1. **Adequate Representation and Arm's-Length Negotiations**.

Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class[,]" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see McKinney-Drobnis, 16 F.4th at 607. The court previously addressed the adequacy of counsel and the arm's-length negotiation factors in connection with preliminary approval. (See Dkt. 33, PAO at 10-11, 14-15). With respect to the latter factor, the court noted "that the parties thoroughly investigated and considered their own and the opposing party's positions[,]" "had a sound basis for measuring the terms of the settlement against the risks of continued litigation," and that there was "no evidence that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties." (Dkt. 33, PAO at 15). Based on the record before the court and the court's previous findings, the court finds these factors weigh in favor of granting final approval.

#### 2. **The Relief Provided to the Class is Adequate**.

In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

---

[8] Prior to the 2018 amendment to Rule 23(e), courts applied the "Churchill" factors to assess whether a class settlement was fair, adequate, and reasonable: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); see McKinney-Drobnis, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule 23(e), the Ninth Circuit instructed courts to consider the Churchill factors). Because "it is still appropriate for district courts to consider these [Churchill] factors in their holistic assessment of settlement fairness[,]" McKinney-Drobnis, 16 F.4th at 609 n. 4; see also 2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."), the court will consider them in evaluating the Rule 23(e)(2) factors.

distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

          a.    *Costs, Risks, and Delay*.

In granting preliminary approval, the court found that the class recovery was fair and reasonable, "particularly when viewed in light of the litigation risks and costs, and delay of trial and appeal." (Dkt. 33, PAO at 16). Under the circumstances, it is significant that class members will receive a monetary or other recovery "by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). In short, the court finds these factors support approval of the settlement.

          b.    *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the method of distribution of relief to class members is reasonable. Payments to class members will consist of either a Credit Benefit or a Cash Benefit. (See Dkt. 31-1, Settlement Agreement at ¶¶ 2.46, 5.2). Class members could do nothing, and automatically receive a credit good toward any "purchase made through Go-Puff." (See id. at ¶¶ 2.8, 2.46). Alternatively, class members had the option of receiving a cash payment. (See id. at ¶¶ 2.9, 2.46); (see Dkt. 35-2, Shumway Decl. at ¶ 15) (stating that as of May 6, 2024, Angeion had received 2,090 claims). Under the circumstances, the court is persuaded that the method of distribution is fair and is intended "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg and Rubenstein on Class Actions, § 13:53 (6th ed.). Thus, this factor weighs in favor of approval.

    c. *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate and reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted this factor "as imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted). In doing so, the court "must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class[.]" Id. (internal quotation marks omitted). The court must assess the proposed award of attorney's fees by considering the Bluetooth factors. See, e.g., id. at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e) analysis.") (internal quotation marks omitted) (brackets in original).

Here, application of the Bluetooth factors to the requested attorney's fees award does not undermine the fairness of the settlement. First, the settlement provides for up to $100,000 (25% of the gross settlement amount) in attorney's fees. (See Dkt. 31-1, Settlement Agreement at ¶ 8.1). Thus, counsel would not be receiving a disproportionate share of the settlement. See Bluetooth, 654 F.3d at 947 (noting that signs of collusion include "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded") (internal quotation marks omitted). Second, the Settlement Agreement does not include a clear sailing provision, (see Dkt. 31-1, Settlement Agreement at ¶ 8.1), and any fees not awarded will be added to the net settlement fund, from which payments to class members will be made. (See id.) (providing that "Defendant may, at its discretion, challenge the amount of Class Counsel's request" for fees and costs).

///

        d.    *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[9] Fed. R. Civ. P. 23(e)(2)(C)(iv). No such agreements are at issue in this case.

### 3. Equitable Treatment of Class Members.

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 Newberg and Rubenstein on Class Actions, § 13:48 (6th ed.).

In granting preliminary approval, the court set forth the allocation plan, (see Dkt. 33, PAO at 3), and did not find any issues of concern. (See id.); (see, generally, id. at 15-16). Thus, this factor also weighs in favor of final approval.

### 4. The Reaction of Class Members to the Proposed Settlement.

The reaction of the class members to the proposed settlement has been very positive. Significantly, there were no objections and only one request for exclusion. (See Dkt. 35-2, Shumway Decl. at ¶¶ 16-17). The lack of objections and the single request for exclusion further support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections).

---

[9] Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

II. ATTORNEY'S FEES, COSTS, AND SERVICE AWARD.

A. Attorney's Fees.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; id. (Where a "[class action] settlement produces a common fund[,] . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); In re Hyundai, 926 F.3d at 570 (same). The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The percentage-of-recovery method is typically used when a common fund is created. See id. at 942. "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." In re Apple Inc. Device Performance Litig., 50 F.4th 769, 784 (9th Cir. 2022).

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See In re Hyundai, 926 F.3d at 570. Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" Id. (internal citation omitted). However, "adjustments [to the lodestar calculation] are the exception rather than the rule." Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM Holdings, Inc., 794 F.Appx. 584, 586 (9th Cir. 2019) (same).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a

11

reasonable fee, using 25% as a benchmark." In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." Id.; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee; and (5) awards in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

Here, the court will utilize the percentage of fund method, as it is the most likely to achieve a reasonable result. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). Under the circumstances, the court finds that the requested $100,000 in attorney's fees, (Dkt. 34, Fee Motion at 1), which equates to the 25% benchmark, constitutes a reasonable fee. See In re Hyundai, 926 F.3d at 570-71 (recognizing 25% benchmark and noting that the percentage method is "a rough approximation of a reasonable fee"); Bluetooth, 654 F.3d at 942 (noting benchmark is a reasonable fee award).

B. Costs.

Class counsel seek $8,839.20 in costs. (See Dkt. 34, Fee Motion at 1). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $8,839.20 in costs.

C. <u>Class Representative Service Award</u>.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 977 (9th Cir. 2003); <u>see</u> <u>also</u> <u>Wren v. RGIS Inventory Specialists</u>, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (<u>See</u> Dkt. 48, PAO at 17-18); <u>Radcliffe v. Experian Info. Sols. Inc.</u>, 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $1,500 to plaintiff was reasonable. (<u>See</u> Dkt. 33, PAO at 18). The court sees no reason to depart from its previous determination.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. The Joint Motion for Final Approval of Class Action Settlement **(Document No. 35)** is **granted** upon the terms and conditions set forth in this Order.

2. Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award **(Document No. 34)** is **granted** upon the terms and conditions set forth in this Order.

3. The court hereby **grants final approval** of the parties' Class Action Settlement Agreement (Dkt. 31-1). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ 2.43 of the Settlement Agreement and this Order.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

6.   Plaintiff Jonathan Beer shall be paid a service payment of $1,500.00 in accordance with the terms of the Settlement Agreement and this Order.

7.   Class counsel shall be paid $100,000.00 in attorney's fees, and $8,839.20 in costs in accordance with the terms of the Settlement Agreement and this Order.

8.   The Settlement Administrator, Angeion, shall be paid its fees in accordance with the terms of the Settlement Agreement and this Order.

9.   All class members who did not validly and timely request exclusion have released their claims against any of the released parties (as defined in the Settlement Agreement) as set forth in this Order and the Settlement Agreement.

10.   Except as to any class members who have validly and timely requested exclusion, this action is dismissed with prejudice, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11.   Without affecting the finality of this Order, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12.   Judgment shall be entered accordingly.

Dated this 11th day of June, 2024.

                /s/
Fernando M. Olguin
United States District Judge